An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CITIZEN OUTREACH, INC.,
Appellant,
vs.
STATE OF NEVADA BY AND
THROUGH ROSS MILLER, ITS
SECRETARY OF STATE,
Respondents.

No. 63784

**FILED**

FEB 0 9 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court judgment concerning violations of the campaign practices statutes. First Judicial District Court, Carson City; James E. Wilson, Judge.

Prior to the 2010 general election, appellant Citizen Outreach, Inc., published and distributed two flyers criticizing then-Assemblyman and candidate for reelection John Oceguera. The State filed a civil complaint alleging that Citizen Outreach violated Nevada's campaign practices statutes by publishing the flyers but failing to disclose its contributors and expenditures. The district court granted summary judgment in favor of the State, ordered Citizen Outreach to pay civil penalties and attorney fees, and issued an injunction requiring Citizen Outreach to disclose its contributors and expenditures according to Nevada's campaign practices statutes. Citizen Outreach now appeals.

We review summary judgments de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* Here, Citizen

SUPREME COURT
OF
NEVADA

(O) 1947A

15-04147

Outreach does not dispute that it published the flyers or that it did not disclose its contributors and expenditures, and we are asked only to decide whether the flyers were express advocacy under applicable Nevada law. Because we conclude that the flyers expressly advocated the defeat of Oceguera, we affirm.

In 2010, when Citizen Outreach distributed the flyers, an organization that made an "expenditure" on behalf of a candidate was required to disclose all contributors who gave the organization more than $100, NRS 294A.140(1) (2007), and all expenditures over $100, NRS 294A.210(1) (2007). "[E]xpenditure[]" was defined as money spent "to *advocate expressly* the election or defeat of a clearly identified candidate," NRS 294A.004(2) (2009) (emphasis added), but "advocate expressly" was not defined by statute until 2011. 2011 Nev. Stat., ch. 501, § 36, at 3286; *see also* NRS 294A.0025.

Citizen Outreach argues that the 1997 Legislature, which enacted the essential language contained in NRS 294.004(2) (2009), 1997 Nev. Stat., ch. 118, § 17, at 238-39, intended to create a bright-line rule limiting express advocacy to communications containing so-called magic words of advocacy. These words may include "'vote for,' 'elect,' 'support,' . . . 'vote against,' 'defeat,' [or] 'reject.'" *Buckley v. Valeo*, 424 U.S. 1, 44 n.52 (1976); *see also, e.g., Fed. Election Comm'n v. Christian Action Network, Inc.*, 110 F.3d 1049, 1051 (4th Cir. 1997); *Fed. Election Comm'n v. Cent. Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 52-53 (2d Cir. 1980). In contrast, the State argues that the Legislature intended to include as express advocacy communications that lack magic words but nevertheless unambiguously command readers to vote for or against a candidate. *See Fed. Election Comm'n v. Furgatch*, 807 F.2d 857,

864 (9th Cir. 1987); 11 C.F.R. § 100.22(b) (2011); *see also* 2011 Nev. Stat., ch. 501, § 36, at 3286 (adopting this broader definition of express advocacy). Both of these interpretations are plausible, thus we turn to the legislative history for guidance. *See State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 294, 995 P.2d 482, 485 (2000) (stating that this court will turn to legislative history when interpreting an ambiguous statute).

When the 1997 Legislature was discussing the definition of "expenditures" at issue here, legislative counsel was specifically asked to research the difference between issue advocacy and express advocacy under then-existing law. Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., March 19, 1997), at 11. At a later committee session, legislative counsel explained that expenditures meant money spent for communications that either use magic words of advocacy or that, given the context of the communication, communicate an unambiguous command to vote for or against a clearly identified candidate. Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., April 7, 1997), at 8. Although *Furgatch* was not mentioned by name, it is apparent that legislative counsel was referring to *Furgatch* and its contextual understanding of express advocacy. *See id.* Citizen Outreach argues that the Legislature intended to adopt the magic words test because *Buckley,* unlike *Furgatch,* was mentioned by name throughout the legislative history. *See id.* at 7. The legislative history reflects, however, that the only people to name *Buckley* while advocating for the magic words test were lobbyists or members of the public. *See* Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th

SUPREME COURT
OF
NEVADA

(O) 1947A

3

Leg. (Nev., Mar. 19, 1997), at 1-2, 5, 7, 9-10. Therefore, these comments do not necessarily reflect the Legislature's intent.

Moreover, the narrow magic words test would "eviscerat[e]" Nevada's disclosure requirements because a speaker could easily skirt these requirements simply "by avoiding certain key words while conveying a message that is unmistakably directed to the election or defeat of a named candidate." *Furgatch*, 807 F.2d at 863. We cannot conclude that the Legislature intended to enact this extensive legislation to achieve such little practical purpose. *See D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 477, 168 P.3d 731, 738 (2007) (stating that this court avoids interpretations of statutes that render language meaningless or produce absurd results). Therefore, we conclude that the Legislature must have intended to adopt the broader, contextual definition of "advocate expressly" discussed in *Furgatch* rather than the narrower magic words test adopted by other courts. We now turn to *Furgatch* and the flyers at issue here.

Under *Furgatch*, a communication advocates expressly if (1) the "message is unmistakable and unambiguous," (2) the communication "presents a clear plea for action," and (3) it is "clear what action is advocated," such that a reasonable person could only understand that voting for or against a particular candidate was being advocated. *Furgatch*, 807 F.2d at 864. We conclude that both of Citizen Outreach's flyers were express advocacy under *Furgatch*'s three-part test. The first flyer described Oceguera as "Getting Fat off the Taxpayers" by earning one salary as a firefighter and one as an assemblyman, "voting for tax hikes," and "sponsoring trivial legislation." The flyer concluded "[w]e don't need any more fiddling from John Oceguera." The second flyer bore

similar criticisms, accused Oceguera of "gam[ing] the system to retire at age 48," and commanded voters to "tell John Oceguera that he needs to work like the rest of us!" The only way that a voter could stop Oceguera's "fiddling" or "tell" him "to work like the rest of us" was by voting against Oceguera. Thus, these flyers communicate a clear and unambiguous plea to vote against Oceguera and are express advocacy under *Furgatch* and NRS 294A.004(2) (2009).

The Arizona Court of Appeals recently addressed a television advertisement that commanded viewers to "[t]ell [the candidate] to protect children, not people who harm them," and provided the candidate's office telephone number. *See Comm. for Justice & Fairness v. Ariz. Sec'y of State's Office*, 332 P.3d 94, 96 (Ariz. Ct. App. 2014) (first alteration in original) (internal quotation marks omitted). Because Arizona law contemplated a contextual understanding of express advocacy similar to the *Furgatch* test, the court concluded that the advertisement was express advocacy subject to regulation. *Id.* at 100, 102. Similar to the flyers here, the advertisement in *Committee for Justice and Fairness* instructed viewers to "[t]ell" the candidate to change his behavior. *Id.* at 96. But the advertisement gave viewers a way to tell the candidate by providing the candidate's telephone number, *id.*, whereas the flyers in this case provided no such alternative method. Thus, the message of Citizen Outreach's flyers was an even clearer plea to vote against Oceguera than the message in *Committee for Justice and Fairness*.

We also reject Citizen Outreach's arguments that the First Amendment mandates additional limitations on disclosure requirements not imposed by NRS Chapter 294A. Contrary to Citizen Outreach's assertions, the First Amendment does not mandate that disclosure

requirements be limited to (1) communications using magic words, *McConnell v. Federal Election Commission*, 540 U.S. 93, 192-94 (2003), *overruled on other grounds by Citizens United v. Federal Election Commission*, 558 U.S. 310, 365-66 (2010); (2) contributions earmarked for political purposes by the donors, *Center for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270, 292 (4th Cir. 2013); or (3) entities that have political advocacy as a major or primary purpose. *See Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1009-10 (9th Cir. 2010).[1]

The district court therefore properly granted summary judgment in favor of the State.

---

[1]Citizen Outreach also argued for the first time in its reply brief that even if none of these additional limitations were constitutionally mandated, NRS 294A.004(2) (2009) nevertheless cannot survive exacting scrutiny. Because Citizen Outreach did not make this argument until its reply brief, we decline to address it. *See Edelstein v. Bank of New York Mellon*, 128 Nev. ___, ___ n.13, 286 P.3d 249, 261 n.13 (2012) (stating that this court need not consider arguments raised for the first time in reply briefs); *see also* NRAP 28(c) (stating that a reply brief "must be limited to answering any new matter set forth in the opposing brief").

To the extent that Citizen Outreach argues that Nevada's disclosure requirements violate the First Amendment as applied to Citizen Outreach, we summarily reject this argument due to Citizen Outreach's failure to put forth any evidence below to support it. *Cf. Bates v. City of Little Rock*, 361 U.S. 516, 524, 527 (1960) (holding that ordinances mandating disclosure of organizations' membership lists violated the First Amendment as applied where "substantial uncontroverted evidence" indicated that people identified as members of the organizations were harassed and threatened, and fear of community hostility resulting from disclosure caused reductions in membership).

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

cc:    Hon. James E. Wilson, District Judge
David Wasick, Settlement Judge
Center for Competitive Politics
Mueller Hinds & Associates
Attorney General/Carson City
Carson City Clerk

DOUGLAS, J., with whom SAITTA, J., agrees, dissenting:

As to the campaign practices in Nevada, the magic word test should not be required, so as to allow for the transparency in disclosure of contributions and expenditures spent advocating expressly the election or defeat of a clearly identified candidate.

When the 1997 Legislature was discussing the definition of "expenditures" at issue here, legislative counsel was specifically asked to research the difference between issue advocacy and express advocacy under then-existing law. Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., March 19, 1997), at 11. At a later committee session, legislative counsel explained that expenditures meant money spent for communications that either use magic words of advocacy or that, given the context of the communication, communicate an unambiguous command to vote for or against a clearly identified candidate. Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., April 7, 1997), at 8.

I would note *Furgatch*[1] was not mentioned by name, but it is apparent that legislative counsel was referring to *Furgatch* and its contextual understanding of express advocacy. *See* Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., April 7, 1997), at 8. Citizen Outreach argues that the Legislature intended to

---

[1]*Fed. Election Comm'n v. Furgatch*, 807 F.2d 857 (9th Cir. 1987).

adopt the magic words test because *Buckley*,[2] unlike *Furgatch*, was mentioned by name throughout the legislative history. That legislative history reflects, however, that the only people to name *Buckley* while advocating for the magic words test were lobbyists or members of the public. *See* Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., March 19, 1997), at 1-2, 5, 7, 9-10. Therefore these comments do not necessarily reflect the Legislature's intent.

Moreover, the narrow magic words test as allowed by the majority will "eviscerate[e]" Nevada's disclosure requirements because a speaker can easily skirt these requirements simply "by avoiding certain key words while conveying a message that is unmistakably directed to the election or defeat of a named candidate." *Furgatch*, 807 F.2d at 863. Thus, I cannot conclude that the Legislature intended to enact this extensive legislation to achieve such little practical purpose. *See D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 477, 168 P.3d 731, 738 (2007) (stating that this court avoids interpretations of statutes that render language meaningless or produce absurd results). I submit that the Legislature must have intended to adopt the broader, contextual definition of "advocate expressly" discussed in *Furgatch* rather than the narrower magic words test adopted by other courts.

As to the flyers at issue here, under *Furgatch* a communication advocates expressly if (1) the "message is unmistakable and unambiguous," (2) the communication "presents a clear plea for action," and (3) it is "clear what action is advocated," such that a reasonable person could only understand that voting for or against a

---

[2]*Buckley v. Valeo*, 424 U.S. 1 (1976).

particular candidate was being advocated. *Furgatch*, 807 F.2d at 864. I submit that both of Citizen Outreach's flyers were express advocacy under *Furgatch*'s three-part test. The first flyer described Oceguera as "Getting Fat off the Taxpayers" by earning one salary as a firefighter and one as an assemblyman, "voting for tax hikes," and "sponsoring trivial legislation." The flyer concluded "[w]e don't need any more fiddling from John Oceguera." The second flyer bore similar criticisms, accused Oceguera of "gam[ing] the system to retire at age 48," and commanded voters to "tell John Oceguera that he needs to work like the rest of us!" The only way that a voter could stop Oceguera's "fiddling" or "tell" him "to work like the rest of us" was by voting against Oceguera. Thus, these flyers communicate a clear and unambiguous plea to vote against Oceguera and are express advocacy under *Furgatch* and NRS 294A.004(2) (2009).

The Arizona Court of Appeals recently addressed a television advertisement that commanded viewers to "[t]ell [the candidate] to protect children, not people who harm them," and provided the candidate's office telephone number. *See Comm. for Justice & Fairness v. Ariz. Sec'y of State's Office*, 332 P.3d 94, 96 (Ariz. Ct. App. 2014) (first alteration in original) (internal quotation marks omitted). Because Arizona law contemplated a contextual understanding of express advocacy similar to the *Furgatch* test, the court concluded that the advertisement was express advocacy subject to regulation. *Id.* at 100, 102. Similar to the flyers here, the advertisement in *Committee for Justice and Fairness* instructed viewers to "[t]ell" the candidate to change his behavior. *Id.* at 96. But the advertisement gave viewers a way to tell the candidate by providing the candidate's telephone number, *id.*, whereas the flyers in this case provided no such alternative method. Thus, the message of Citizen Outreach's

flyers was an even clearer plea to vote against Oceguera than the message in *Committee for Justice and Fairness*.

Unlike the majority, I would reject Citizen Outreach's arguments that the First Amendment mandates additional limitations on disclosure requirements not imposed by NRS Chapter 294A. Contrary to Citizen Outreach's assertions, the First Amendment does not mandate that disclosure requirements be limited to (1) communications using magic words, *McConnell v. Federal Election Commission*, 540 U.S. 93, 192-94 (2003), *overruled on other grounds by Citizens United v. Federal Election Commission*, 558 U.S. 310, 365-66 (2010); (2) contributions earmarked for political purposes by the donors, *Center for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270, 292 (4th Cir. 2013); or (3) entities that have political advocacy as a major or primary purpose. *See Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1009-10 (9th Cir. 2010).

Simply put, the District Court got it right; magic words are not required as to express advocacy communications, and disclosure of contributions and expense over $100 by groups should be required.

_____, J.
Douglas

_____, J.
Saitta