168 P.3d 731 (2007)
D.R. HORTON, INC., A Nevada Corporation; RCR Companies; Central Valley Insulation Las Vegas, LLC; and Builder Services Group, Inc., d/b/a Central Valley Insulation, Petitioners,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, In and For the COUNTY OF CLARK, and The Honorable Allan R. Earl, District Judge, Respondents, and
First Light at Boulder Ranch Homeowners Association, A Nevada Corporation, Real Party in Interest.
No. 47654.
Supreme Court of Nevada.
October 11, 2007.
*734 Marquis & Aurbach and Jack Juan and Micah S. Echols, Las Vegas, for Petitioner D.R. Horton, Inc.
Hansen & Rasmussen and R. Scott Rasmussen, Las Vegas, for Petitioners Central Valley Insulation Las Vegas, LLC, and Builder Services Group, Inc., d/b/a Central Valley Insulation.
Quon Bruce Christensen Law Firm and James R. Christensen, Las Vegas, for Real Party in Interest.
Burris, Thomas & Springberg and Andrew J. Thomas, Las Vegas, for Amicus Curiae Nevada Trial Lawyers Association.
Jeanne Winkler & Associates and Jeanne L. Winkler, Las Vegas, for Amicus Curiae Safe Homes Nevada.
Marquiz Law Office and Craig A. Marquiz, Henderson, for Amicus Curiae Nevada Subcontractors Association.
Snell & Wilmer, LLP, and Leon F. Mead II, Las Vegas, for Amici Curiae Associated *735 General Contractors, Las Vegas Chapter, and Coalition for Fairness in Construction.
BEFORE THE COURT EN BANC.

OPINION
By the Court, GIBBONS, J.:
In this petition, we address the question of how district courts should determine the sufficiency of a pre-litigation notice of constructional defects under NRS 40.645. The parties and amici curiae[1] invite us to examine the reasonableness of a pre-litigation notice that triggers a builder's right to repair, or a claimant's right to commence suit. Today, we provide district courts with a test and guidelines to measure the sufficiency of the pre-litigation notice.
Real party in interest First Light at Boulder Ranch Homeowners Association utilized a "representative sample" of constructional defects in a small number of homes as a basis for giving notice of constructional defects common throughout a development of 414 residences. According to petitioners, First Light's extrapolated notice was inadequate because it failed to provide the "reasonable detail" of defects and their location necessary to preserve for petitioners a meaningful opportunity to repair the alleged defects before suit is brought. We conclude that adequate extrapolated pre-litigation notice must have a reasonable statistical basis to describe the alleged defects and their locations in reasonable detail sufficient to afford contractors a meaningful opportunity to repair the alleged defects. Therefore, we articulate below a test to guide district courts in making written findings on whether a pre-litigation notice satisfies that threshold. So long as an extrapolated notice meets that requirement, district courts have wide discretion to determine the adequacy of a pre-litigation notice on a case-by-case basis.
Since we have adopted a test to be used by the district courts, we grant this petition in part and direct the district court to reconsider the notice and make factual findings as discussed herein.

FACTS
The First Light at Boulder Ranch Community is located in Henderson, Nevada. Petitioner D.R. Horton, Inc., built and sold the community in twenty-six releases. The community consists of 138 buildings with three residential units in each building, totaling 414 residences. The community has three floor plans, each with two possible elevations, for a total of six different types of homes. Approximately 40 contractors and subcontractors from various trades, some of which used several work crews, were involved in constructing the community. At times, more than one subcontractor from each trade was employed at the community.
Believing that numerous constructional defects may exist in each residence in the community, First Light hired experts to assist it in preparing an NRS 40.645 pre-litigation notice of constructional defects. Those experts formulated the notice after using visual and invasive testing in a small representative sampling of the homes in the community. But they did not provide D.R. Horton with the addresses or the expert report of the homes they had tested. Based on the occurrence of each defect they found, the experts extrapolated the percentage of homes in which they believed each defect existed throughout the entire community. The defects First Light alleges are categorized into several major groups, many of which have multiple subcategories. According to First Light's notice, approximately 160 defects may exist in various combinations in each of the 414 homes. First Light's experts estimate that anywhere from 2 to 100 percent of the 414 homes in the community have any combination of each of the 160 defects. In its notice, First Light did not specify the floor plans, elevations, or addresses of the homes in which it alleges that a particular defect may exist. Unsatisfied with D.R. Horton's response to its notice, First Light *736 filed a constructional defect action with the district court.
In response to First Light's pre-litigation notice and action, D.R. Horton moved the district court for a declaratory judgment, stating that First Light's NRS 40.645 notice was unreasonable and thus statutorily insufficient. The district court denied that motion, expressing dissatisfaction with the statutory constraints when it comes to cases involving a significant number of homes.[2] The district court further refused to declare First Light's NRS 40.645 notice statutorily insufficient. In its written order, the district court found that First Light "properly relied upon expert opinion and representative sampling pursuant to NRS 40.645(3)[and] (4)" to prepare its notice.[3]
D.R. Horton then filed this petition challenging the district court's order denying its motion for declaratory relief.[4] Through this petition, D.R. Horton challenges the district court's order, arguing that First Light's prelitigation notice does not give it notice with the "reasonable detail" required by NRS 40.645(2). D.R. Horton further argues that the inadequacy of First Light's notice frustrates its opportunity to repair under NRS 40.647. In its answer, First Light contends that its notice is sufficient and that D.R. Horton bears the burden of finding and repairing the defects noticed or allow the litigation to proceed.

DISCUSSION
D.R. Horton seeks a writ of prohibition restraining the district court from allowing First Light to ignore the requirements of NRS 40.645(2). Additionally, D.R. Horton seeks a writ of mandamus directing the district court to (1) vacate the order denying D.R. Horton's motion for declaratory relief with respect to First Light's duty to provide adequate pre-litigation notice and (2) order First Light to disclose additional information concerning the defects it alleges in its homes.
Availability of writ relief
Writs of mandamus and prohibition are extraordinary remedies and are available when the petitioner has no "plain, speedy and adequate remedy in the ordinary course of law."[5] The right to immediately appeal or even to appeal in the future, after a final judgment is ultimately entered, will generally constitute an adequate and speedy legal remedy precluding writ relief.[6] Whether a future appeal is sufficiently adequate and speedy necessarily turns on the underlying proceedings' status, the types of issues raised in the writ petition, and whether a future appeal will permit this court to meaningfully review the issues presented.
In this case, which has already existed below in a pre-litigation stage for more than two and one-half years, and which involves a pre-litigation notice of constructional defects designed to prevent litigation altogether, an eventual appeal from any final judgment would be neither a speedy nor adequate remedy. Consequently, writ relief is not precluded by other means of review.
*737 Standards for granting writ relief
Under NRS 34.160, a writ of mandamus is available "to compel the performance of an act which the law . . . [requires] as a duty resulting from an office, trust or station." Mandamus is also available to control a manifest abuse or an arbitrary or capricious exercise of discretion.[7] A writ of prohibition may likewise issue to arrest the performance of an act outside the trial court's discretion.[8] This court has broad discretion in deciding whether to consider a petition seeking relief in the form of mandamus or prohibition.[9]
Although this court infrequently decides to exercise its discretion to consider issues presented in the context of a petition for extraordinary relief, we have elected to exercise our discretion in this instance to consider the issues raised. In doing so, we recognize that in large community-wide constructional defect cases, a fundamental disagreement exists regarding the interpretation of NRS 40.645. The interpretation of this statute is of great importance to both claimants and contractors. Our review of NRS 40.645's application in these constructional defect cases will aid the district courts in managing them.
Having reviewed D.R. Horton's petition, First Light's answer, the amici curiae's briefs, and the parties' supporting documentation, we grant the petition, in part. In doing so, we address the application of NRS 40.645 and establish a "reasonable threshold test" to aid district courts in managing constructional defect cases, thereby avoiding the fate of this case, which has wallowed in a prelitigation quagmire while the parties litigate the level of detail required in a notice that is intended to prevent litigation.
Nevada's constructional defect law
The provisions of NRS Chapter 40, concerning constructional defect actions, reveal that the Legislature intended to provide contractors with an opportunity to repair constructional defects in order to avoid litigation.[10] To ensure that contractors are given an opportunity to repair, the Legislature requires a claimant to give the contractor notice in "reasonable detail"[11] and, based on that notice, to allow the contractor time and the opportunity to inspect and make repairs when a defect is verified.[12] A claimant's failure to comply with those requirements before filing a constructional defect action results in the dismissal or postponement of that action until the claimant complies with those requirements.[13]
NRS 40.645 sets forth the requirements for a pre-litigation constructional defect notice and requires that a notice of constructional defects specify in "reasonable detail" the defects, any known causes, and the defects' locations. The question of what constitutes "reasonable detail" under NRS 40.645 is one of first impression in this court and a matter of statutory interpretation.
This court reviews de novo a district court's interpretation of a statute, even when the issue is raised in a petition for extraordinary writ relief.[14] When a statute's language is clear and unambiguous, it must be given its plain meaning, unless doing so "violates the spirit of the act."[15] A statute is ambiguous if it is capable of being understood in two or more senses by reasonably well-informed persons.[16] When construing *738 an ambiguous statute, "[t]he meaning of the words used [in the statute] may be determined by examining the context and the spirit of the law or the causes which induced the legislature to enact it."[17] Moreover, we read legislative enactments as a whole in order to understand the Legislature's intent.[18] However, "no part of a statute [may] be rendered meaningless and its language `should not be read to produce absurd or unreasonable results.'"[19]
With these rules in mind, we turn to the statute at issue in this case, NRS 40.645, which states, in pertinent part,
2. The notice given pursuant to subsection 1 [of NRS 40.645] must:
. . . .
(b) Specify in reasonable detail the defects or any damages or injuries to each residence or appurtenance that is the subject of the claim; and
(c) Describe in reasonable detail the cause of the defects if the cause is known, the nature and extent that is known of the damage or injury resulting from the defects and the location of each defect within each residence . . . to the extent known.
3. [The notice may include] expert opinion concerning the cause of the constructional defects and the nature and extent of the damage or injury resulting from the defects which is based on a valid and reliable representative sample of the components of the residences or appurtenances . . . as notice of the common constructional defects within the residences . . . to which the expert opinion applies.
4. [O]ne notice may be sent relating to all similarly situated owners of residences . . . within a single development that allegedly have common constructional defects if:
. . . .
(b) [Among other things,] it is the opinion of the expert that those similarly situated residences . . . may have . . . common constructional defects.[20]
Although the parties contend that NRS 40.645 is clear and unambiguous, each party advances a different interpretation. D.R. Horton contends that although extrapolation evidence may be used under NRS 40.645(3) and (4) to formulate a pre-litigation notice, NRS 40.645(2) requires the claimant to specify in "reasonable detail" the defects that exist within each residence in the development. First Light contends that NRS 40.645(2) describes what the contents of the notice should include, but extrapolation evidence under NRS 40.645(3) and (4) can satisfy the "reasonable detail" requirement. We conclude that NRS 40.645 is ambiguous based on the number of differing, yet reasonable, interpretations proffered by the parties and amici curiae. While the statute sets forth requirements for a pre-litigation notice, we are unable to determine from the statute's plain language the exact meaning of each of those requirements. Therefore, we examine the legislative history to ascertain the Legislature's intent when it drafted the statute.
During a legislative hearing discussing the 2003 amendments to NRS 40.645, a representative of the contractors' lobby, which advocated for the contractors' opportunity to repair, explained the contractors' view of that opportunity.[21] From the legislative history, it is apparent that the Legislature discussed the contractors' approach, accepted it, and approved the current version of NRS 40.645 based on that approach. During their discussion, the contractors' representative testified *739 that the contractors' lobby envisioned a process through which claimants with similarly situated homes, who found a defect they believed to be common throughout their homes, could hire an expert to conduct a representative sampling of their homes. He explained that the expert should be allowed to use the results of that sampling to extrapolate the percentage of houses within a group of homes that the expert estimated were affected by that common defect. The claimants would then be required to provide the contractor notice of the defect in compliance with the requirements of NRS 40.645 and the opportunity to repair.
The contractors' representative further explained that once a contractor receives a pre-litigation notice, "he has . . . [the] opportunity to make a business decision."[22] Some contractors, he explained, having received notice of a defect, will "avail [themselves] of the opportunity to notify all the other claimants who could have [that] problem, according to the expert's report, and deal with them directly."[23] If the contractor decides not to notify the claimants of the alleged defect, the claimants would then have the right to initiate a constructional defect action.
The contractors' representative stated that the process would apply to defects that were common throughout many houses. The intent was that a contractor, having received a notice that either a workmanship or design defect existed, would send a letter to every claimant who, according to its records, might be affected.[24] In that letter, the contractor would notify the claimants, according to the expert's extrapolation, that a defect might exist in their homes. As the contractors' representative envisioned, the contractor would invite each claimant to "[p]lease call us and we will come out, inspect, repair, or replace [the defect]."[25] He then explained that if the contractor decided not to avail himself of the opportunity to repair, the claimant would have the right to sue and petition "the court [to] exact the appropriate penalty."[26] During that discussion, the contractors' representative also clearly stated that the burden of verifying a defect is on the contractor, not the claimant.
It is clear from the legislative history that the Legislature intended to preserve an opportunity for contractors to repair the homes they construct. It is also clear that contractors are entitled to reasonable notice of alleged defects in their homes so that they can verify and repair those defects in lieu of litigation. If the contractors decide to verify and repair, they are responsible for the costs to do so. However, this responsibility on the contractors' part does not relieve the claimant of the duty to provide reasonable notice of what defects exist and a reasonable approximation of the location of those defects.[27]
When multiple homes are believed to contain a common defect, the Legislature intended to allow owners of those homes to formulate a pre-litigation notice using expert opinion and extrapolation,[28] so long as their notice satisfies the "reasonable detail" requirement of NRS 40.645(2). Because of the variety of constructional defects that can occur, no universal formula exists for use in measuring whether every pre-litigation notice that comes before a district court is reasonable. Thus, the district courts have wide discretion to make that determination. To guide the district courts in the exercise of that discretion, this court now establishes a "reasonable threshold test," which every pre-litigation notice must satisfy, but only if challenged by the contractor.
Extrapolation is defined as "[t]he process of estimating an unknown value or quantity *740 on the basis of the known range of variables."[29] Extrapolation encompasses the statistical use by an expert witness of a valid and reliable representative sample to formulate an opinion that similarly situated residences and appurtenances may have common constructional defects.[30] The scope of the extrapolated notice must be narrow. Homes included within the scope of an extrapolated notice typically will be similarly situated only if they are part of a subset of homes within the development. In some cases, a subset of homes for extrapolation purposes may be those of a particular floor plan. In other cases, depending on the nature or location of the defect, the subset of homes to which the extrapolated notice applies may be even narrower, such as homes of a particular elevation within a particular floor plan. Likewise, a valid extrapolated notice may be limited to a subset of homes in which a particular product or type of construction was used. In all cases, an extrapolated notice is valid only if it identifies the subset or characteristics of the subset to which it applies. In order to achieve the minimum statistical basis that the reasonable threshold test requires, we suggest that the district court require the claimants' expert to test and verify the existence of the alleged defect in at least one of the homes in each subset of homes included within the scope of the extrapolated notice. Additionally, the claimants must provide the address of each home tested and clearly identify the subset of homes to which the pre-litigation notice applies.
In order to provide valid pre-litigation notice, that group of claimants must narrow the scope of their extrapolated notice. They should investigate further and identify a subset of homes within the community that has the purported defect. If they genuinely believe that every home in the community may have the alleged defect, then the claimants should test and verify the defect in at least one home from each subset of homes in the community and extrapolate the percentage of homes within each subset that they believe are likely to contain the defect. The district courts must then employ their wide discretion in determining whether a valid and representative sample has been used for the size and make-up of each subset. In exercising their discretion, the district courts may determine that a notice is not reasonable unless a defect is confirmed in more than one home in each subset. These guidelines merely set the minimum threshold that an extrapolated pre-litigation notice must satisfy. Once the district court determines that a notice is reasonable, the contractor bears the burden of verifying and repairing the alleged defects in every home in the subset of homes identified in the extrapolated notice.[31]
We establish the reasonable threshold test because of the benefits and protections it provides for Nevada's contractors and claimants. It allows a contractor who chooses to repair to focus on testing and verifying defects in homes that are truly "similarly situated" and therefore more likely to contain an alleged defect. The rule increases the likelihood that a contractor who chooses to verify and repair defects can do so within the time constraints set out in the provisions of NRS Chapter 40. It also reduces the number of subcontractors a contractor must involve in investigating an alleged defect and who may be included as defendants in a lawsuit if an alleged defect is not repaired.
Consumers and claimants will also benefit from the reasonable threshold test. The test prevents the contractor from having to inconvenience all claimants in a community with invasive testing in their homes unless it is statistically likely that their homes actually contain the defect alleged. The test may also reduce the costs each Nevada contractor has to add into the cost of new homes in *741 anticipation of community-wide constructional defect disputes. We emphasize that the Legislature intended NRS 40.645 to provide Nevada contractors an opportunity to inspect and repair defects in the homes they construct. To that end, a pre-litigation notice must contain reasonable detail that a contractor who makes the business decision to inspect and repair can do so in compliance with all of the provisions of NRS 40.600 though NRS 40.675, which govern constructional defect cases.
We further conclude that pre-litigation notices are presumed valid under NRS 40.645. A contractor who wishes to challenge the adequacy of a pre-litigation notice bears the burden of doing so with specificity. Because each case is factually distinct, the district courts have wide discretion to consider each contractor's challenge to the reasonableness of each pre-litigation notice. With the assistance, expertise, and recommendations of the capable special masters appointed to assist in these matters, the district courts are well suited to determine whether a notice preserves a contractor's opportunity to repair.
In determining the reasonableness of a notice, a district court should keep in mind the judiciary's policy of maintaining judicial economy,[32] the particular requirements and limitations set out in NRS Chapter 40, and the policy considerations discussed above. Although the district court has the discretion to hold an evidentiary hearing to determine the reasonableness of the notice, the district court may also make such a determination after examining the affidavits of the parties, witnesses, and expert witnesses.
We conclude that a claimant cannot utilize the phrase "to the extent known" in NRS 40.645(2)(c) to justify withholding pertinent information from a pre-litigation notice. By the same token, the district court should use its wide discretion to ensure that a contractor is not utilizing NRS 40.645 as a shield for the purpose of delaying the commencement of repairs or legitimate litigation. Additionally, when multiple constructional defects are alleged in a single notice, the district court may conclude that the notice is adequate as to some of the defects and not as to others. The district court may sever the defects in the notice. The district court may then approve the notice as to some of those defects and allow the repair or litigation process to immediately commence as to those defects. Furthermore, because a district court's decisions may ultimately be subject to our review, the district courts shall make specific written findings as to the reasons why a pre-litigation notice of defects is reasonable or unreasonable. The district court's findings must also note how the notice preserves for the contractor an opportunity to repair.
In this case, it was permissible for First Light to formulate its pre-litigation notice using expert opinion and extrapolation. However, the district court did not have an opportunity to apply the reasonable threshold test and to determine whether First Light's extrapolated notice provided the "reasonable detail" necessary under NRS 40.645. Therefore, we grant D.R. Horton's petition in part so that the district court can determine whether First Light's notice provided the reasonable detail required as discussed herein.
We further conclude that NRS 40.645(4)(c) requires a claimant to disclose the expert opinions and reports in his possession that were used to prepare his pre-litigation notice. Accordingly, we grant D.R. Horton's petition to the extent that it asks us to require that First Light disclose its supporting expert reports concerning the alleged defects in the homes at First Light at Boulder Ranch Community.
With respect to petitioners' other requests that First Light produce other information such as job files, notes, and photographs, the requirement to produce this information is within the district court's wide discretion. If the district court determines that First *742 Light's pre-litigation notice provides the detail necessary to preserve D.R. Horton's opportunity to repair, it should make specific findings supporting this conclusion and that the disclosure of this additional information is not necessary.

CONCLUSION
In a constructional defect case, the district court has wide discretion to determine whether a pre-litigation notice is reasonable. This wide discretion should be informed by the reasonable threshold test. As the district court did not have the benefit of this test in ruling on D.R. Horton's motion for declaratory relief, we grant D.R. Horton's petition in part and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its declaratory relief order. The writ shall further direct the district court to reconsider the motion in accordance with the reasonable threshold test and to make written findings with respect to the adequacy of First Light's pre-litigation notice, including, but not limited to, whether First Light's notice preserves D.R. Horton's statutory opportunity to inspect and repair, pursuant to NRS Chapter 40.[33]
We concur: MAUPIN, C.J., and HARDESTY, PARRAGUIRRE, DOUGLAS, CHERRY and SAITTA, JJ.
NOTES
[1] Supporting this petition as amici curiae are the Associated General Contractors, Las Vegas Chapter; the Coalition for Fairness in Construction; and the Nevada Subcontractors Association. Additionally, the Nevada Trial Lawyers Association and Safe Homes Nevada each filed amicus curiae briefs supporting the real party in interest's position.
[2] In the April 24, 2006, hearing, the district court stated, "that's the problem with this statute that works perfectly for one house, or a group of five. Let's say a builder builds a cul-de-sac and there are five homes there. Works perfect for that." The district court further stated that "[i]t doesn't work nearly as well in a project that has 414 units; and I don't think there's a solution that a [c]ourt can create given the boundaries of the statute." Having said that, the district court denied D.R. Horton's motion asking it to declare First Light's notice statutorily deficient. The district court then simultaneously encouraged D.R. Horton to petition this court for a writ instructing it on how to make these cases workable.
[3] The record shows that the district court was reluctant to reach its holding because, while it could not determine that First Light's notice was technically insufficient under the statute, the district court recognized and expressed its concern that First Light's notice did not adequately notify D.R. Horton of which defects existed in each house.
[4] The remaining petitioners, subcontractors in the First Light community, later joined in the petition.
[5] NRS 34.170; NRS 34.330; see also State of Nevada v. Dist. Ct. (Ducharm), 118 Nev. 609, 614, 55 P.3d 420, 423 (2002).
[6] Pan v. Dist. Ct., 120 Nev. 222, 225, 88 P.3d 840, 841 (2004).
[7] Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).
[8] NRS 34.320; Houston Gen. Ins. Co. v. District Court, 94 Nev. 247, 248, 578 P.2d 750, 751 (1978).
[9] Ducharm, 118 Nev. at 614, 55 P.3d at 423; Smith v. District Court, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).
[10] Shuette v. Beazer Homes Holdings Corp., 121 Nev. 837, 853-54, 124 P.3d 530, 542 (2005).
[11] NRS 40.645(2).
[12] NRS 40.647(1).
[13] NRS 40.647(2).
[14] Marquis & Aurbach v. Dist. Ct., 122 Nev. ___, ___, 146 P.3d 1130, 1136 (2006).
[15] McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986).
[16] Thompson v. District Court, 100 Nev. 352, 354, 683 P.2d 17, 19 (1984).
[17] McKay, 102 Nev. at 650-51, 730 P.2d at 443.
[18] Diamond v. Swick, 117 Nev. 671, 676, 28 P.3d 1087, 1090 (2001).
[19] Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (footnote omitted) (quoting Glover v. Concerned Citizens for Fuji Park, 118 Nev. 488, 492, 50 P.3d 546, 548 (2002), overruled in part on other grounds by Garvin v. Dist. Ct., 118 Nev. 749, 59 P.3d 1180 (2002)).
[20] After its amendment in 2003, NRS 40.635(1) states that "NRS 40.600 to 40.695, inclusive: [a]pply to any claim that arises before, on or after July 1, 1995, as the result of a constructional defect."
[21] Hearing on S.B. 241 Before the Assembly Comm. on the Judiciary, 72d Leg. (Nev., May 16, 2003).
[22] Id. at 32.
[23] Id.
[24] Id. at 34.
[25] Id.
[26] Id.
[27] NRS 40.655(f) provides that claimants may recover the reasonable costs they incur in the preparation of their pre-litigation notice if the defects alleged are verified.
[28] The parties agree that NRS 40.645(3) and (4) contemplate the use of extrapolation evidence even though the term "extrapolation" is not specifically used.
[29] Black's Law Dictionary 625 (8th ed.2004).
[30] NRS 40.645(4)(b).
[31] Because of the contractor's burden during pre-litigation, we recognize that there are instances when it may be within the contractor's best interest to opt not to repair. If the contractor opts not to exercise its opportunity to repair, the claimant can commence litigation. At that point, the claimant bears the burden of proving the existence of each defect and the extent of damages resulting from those defects in each residence as part of its damages presentation. See Shuette v. Beazer Homes Holdings Corp., 121 Nev. 837, 855-57, 124 P.3d 530, 543-44 (2005).
[32] See State v. Dist. Ct. (Riker), 121 Nev. 225, 234-35, 112 P.3d 1070, 1076 (2005) (holding that in the interest of promoting judicial economy, it was appropriate for the court to grant the relief requested).
[33] We have considered the parties' other arguments and conclude that they lack merit.