An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SCOTT D. SEXTON AND SONIA L. SEXTON,<br>Appellants,<br>vs.<br>LSREF2 APEX TRUST 2012,<br>Respondent. | No. 63132 |
| SCOTT D. SEXTON; AND SONIA L. SEXTON,<br>Appellants,<br>vs.<br>LSREF2 APEX TRUST 2012,<br>Respondent. | No. 63696 |

FILED

SEP 03 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a district court summary judgment in a breach of guaranty action. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

Appellants Scott and Sonia Sexton (the Sextons) guaranteed three commercial loans that eventually went into default. Original respondent Wells Fargo Bank, N.A.—replaced by current respondent, LSREF2 Apex Trust 2012—brought a breach of guaranty action against the Sextons. The district court granted summary judgment against the Sextons, concluding they were liable for $1.75 million, plus another $1 million in attorney fees and costs. We are now asked to determine whether the Sextons should have benefited from certain fair value defenses, codified at NRS 40.459(1) and 40.495(4), that may have reduced the judgment against them. We affirm the district court's judgment because NRS 40.459(1) and 40.495(4) do not apply to the Sextons.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-26820

*The Fair Value Defenses Codified at NRS 40.459(1) Do Not Apply to the Sextons*

NRS 40.459(1)'s fair value defenses do not apply directly to guarantors; instead, NRS 40.495(3) allows guarantors to invoke NRS 40.459(1)'s fair value defenses if "the obligee maintains an action to foreclose or otherwise enforce a mortgage or lien." NRS 40.495(3); *see Lavi v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 38, 325 P.3d 1265, 1268 (2014). NRS 40.495(3)'s language is ambiguous because foreclosure is a multi-step process, and two or more reasonably-informed people could reach different conclusions about when an "obligee maintains an action to foreclose or otherwise enforce a mortgage or lien." NRS 40.495(3); *see D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 476, 168 P.3d 731, 737-38 (2007). Therefore, we must look beyond NRS 40.495(3)'s plain language to determine when guarantors can invoke NRS 40.459(1)'s fair value defenses.

First, our precedent shows NRS 40.495(3) only allows guarantors to invoke the anti-deficiency defenses codified between NRS 40.451 and 40.4639 *after* the actual sale of secured property. *Lavi*, 130 Nev., Adv. Op. 38, 325 P.3d at 1268. Second, "[i]n determining what the Legislature intended, the title of the statute may be considered in construing the statute." *Minor Girl v. Clark Cnty. Juvenile Court Servs.*, 87 Nev. 544, 548, 490 P.2d 1248, 1250 (1971). NRS 40.495(3) incorporates NRS 40.451 to 40.4639 which have two sub-chapter headings: "Foreclosure Sales and Deficiency Judgments" and "Actions by Holders of Junior Real Mortgages After Foreclosure Sales." *See* NRS Chapter 40. Therefore, NRS 40.495(3) incorporates statutes that explain what happens after secured property is sold. Third, the fair value defenses codified at NRS 40.459(1) presume the secured property has been sold, requiring the

district court to consider the property's actual sale price and set the property's fair market value "as of the date of foreclosure sale or trustee's sale." NRS 40.457; NRS 40.459(1). Fourth, the relevant legislative histories show the actual sale of secured property triggers NRS 40.495(3). Legislative counsel and banking interests believed NRS 40.495(3) would allow guarantors to invoke NRS 40.459(1)'s fair value defenses once a foreclosure occurred. *See Hearing on A.B. 557 Before the Senate Judiciary Comm.*, 65th Leg. 12 (Nev., June 9, 1989) (statement by Ms. Stern, Legal Counsel); *see also Hearing on A.B. 557 Before the Assembly Judiciary Comm.*, 65th Leg. 14-15 (Nev., June 16, 1989). Further, NRS 40.495(4) was intended to close "a loophole in the law that allows the bank to file a suit [against a guarantor] but not take the property when the loan is secured by the property." *Hearing on A.B. 273 Before the Assembly Commerce & Labor Comm.*, 76th Leg. 5 (Nev., Mar. 23, 2011) (statement by Assemblyman Marcus Conklin). That loophole only exists, and NRS 40.495(4) is only necessary, if NRS 40.495(3) merely protects guarantors after a foreclosure sale. Therefore, the Legislature apparently viewed NRS 40.495(3) and (4) as companions; NRS 40.495(3) provides fair market value defenses after foreclosure sale, and NRS 40.495(4) provides the same protections before any foreclosure.

Although NRS 40.495(3) is ambiguous, we conclude it does not allow guarantors to invoke the fair value defenses codified at NRS 40.459(1) until an actual foreclosure sale has occurred. Because no sale has occurred here, NRS 40.495(3) cannot apply to the Sextons, and they cannot enjoy the fair value defenses codified at NRS 40.459(1). As such, the Sextons can only invoke a fair value defense to the deficiency judgment against them if NRS 40.495(4) applies.

*The Fair Value Defenses Codified at NRS 40.495(4) Do Not Apply to the Sextons*

AB 273 (codified at NRS 40.495(4)) applies to guarantor actions "commenced on or after the effective date of this act," 2011 Nev. Stat., ch. 311, § 6(3), at 1748, and became effective upon passage and approval, 2011 Nev. Stat., ch. 311, § 7, at 1748. The Governor signed AB 273 on June 10, 2011, at 3:00 p.m., as required by the Nevada Constitution and AB 273's enacting provision. Nev. Const. art. IV § 35; 2011 Nev. Stat., ch. 311, § 7, at 1748. Wells Fargo filed its complaint several hours earlier that same day. Therefore, NRS 40.495(4) was not an effective law when Wells Fargo filed its complaint, and it cannot apply to the Sextons unless the Legislature intended for NRS 40.495(4) to apply retroactively.

"Whether applying a statute in a particular instance constitutes retroactive operation is a question of law that we review de novo." *Sandpointe Apts., LLC v. Eighth Judicial Dist. Court*, 129 Nev., Adv. Op. 87, 313 P.3d 849, 853 (2013). NRS 40.495(4)'s enactment provisions expressly state that it can only apply to breach of guaranty claims filed on or after June 10, 2011. 2011 Nev. Stat., ch. 311, §§ 6(3), 7, at 1748. The Sextons argue the Legislature intended for NRS 40.495(4) to be retroactive as to any claims filed on June 10, 2011, in the hours before the governor signed the bill because the enacting provision expressly states that NRS 40.495(4) applies to any claims "commenced on or after the effective *date* of this act." 2011 Nev. Stat., ch. 311, § 6(3), at 1748 (emphasis added). However, § 7 of AB 273 only made the act effective upon the Governor's approval. 2011 Nev. Stat., ch. 311, § 7, at 1748. Therefore, we reject the Sextons' argument because following the plain language here would violate the Legislature's clear intent to avoid any

retroactive application. *McKay v. Bd. of Supervisors of Carson City*, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986) ("[W]ords in a statute should be given their plain meaning unless this violates the spirit of the act."); *see also Sandpointe Apts.*, 129 Nev., Adv. Op. 87, 313 P.3d at 858-59 (AB 273 was not intended to be retroactive and the language in its enactment provision does not permit retroactive application).

The Sextons cannot invoke the fair value defenses codified at NRS 40.459(1) because NRS 40.495(3) only allows guarantors to invoke those defenses after the secured property is sold. Similarly, the Sextons cannot invoke the fair value defenses from NRS 40.495(4) because applying it here would require an impermissible and unintended retroactive application. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

cc: Hon. Scott N. Freeman, District Judge
Wm. Patterson Cashill, Settlement Judge
Gunderson Law Firm
McDonald Carano Wilson LLP/Reno
Washoe District Court Clerk

HARDESTY, C.J., with whom SAITTA, J., agrees, concurring in part and dissenting in part:

While I concur with the majority's conclusion that NRS 40.495(1) does not apply to the Sextons, I respectfully disagree with the majority's analysis and determination that NRS 40.495(4) was not an effective law when Wells Fargo filed its complaint on the morning of June 10, 2011. The majority concludes that there is an issue of retroactivity here and that the law did not become effective until 3:00 p.m. on June 10, 2011, when the Governor signed AB 273. However, the plain language of the statute and the legislative history indicate that there is no retroactivity issue and that AB 273 became effective at midnight on June 10, 2011, not beginning at 3:00 pm when the Governor signed the bill.

First, NRS 40.495(4)'s enactment provision expressly states that it applies to any breach of guaranty claims *"commenced on or after the effective date* of this act." 2011 Nev. Stat., ch. 311, § 6(3), at 1748 (emphasis added). The "effective date" in this case is June 10, 2011, which begins at 12:00:00 am and ends at 11:59:59 pm. Thus, the plain language of the statute's own enactment terms dictates that A.B. 273 became effective for the entirety of June 10, 2011, and not at the specific time the Governor signed the bill.

Second, the legislative history here demonstrates that there is no retroactivity issue. Specifically, Assemblyman Conklin overtly stated that "[t]here is no retroactivity in this bill. It is simply all future action." *Hearing on A.B. 273 Before the Assembly Commerce & Labor Comm.*, 76th Leg. 12 (Nev., Mar. 28, 2011) (statement by Assemblyman Marcus Conklin). Taken together with the plain language of the bill's enactment

SUPREME COURT
OF
NEVADA

(O) 1947A

provision, there can be no question but that the bill was meant to take effect for the entirety of June 10, 2011.

Moreover, the legislative history reveals that the Legislature wanted to make it difficult for creditors to do exactly what Wells Fargo did, while also ensuring that NRS 40.495(4) did not affect already filed claims. Originally, all of AB 273 would become effective on July 1, 2011. A.B. 273, § 7, 76th Leg. (Nev., Mar. 15, 2011) (as introduced). However, explicit concerns were raised that by making NRS 40.495(4) effective on a set date it would encourage creditors to rush and file suits against guarantors in an effort to avoid the new guarantor protections. *Hearing on A.B. 273 Before the Assembly Commerce & Labor Comm.*, 76th Leg. 12 (Nev., Mar. 28, 2011) (statement by Assemblyman Marcus Conklin). If the Governor signed AB 273 in April, but NRS 40.495(4) did not take effect until July 1, 2011, creditors could use the intervening months filing suit against guarantors to avoid the new protections. *Id.* As such, the Legislature foresaw the possibility that creditors would do exactly what Wells Fargo has done here: rush to file a suit against a guarantor to avoid the application of NRS 40.495(4).

The Legislature responded to these two concerns by making NRS 40.495(4) applicable "only to an action against a guarantor . . . *commenced on or after the effective date* of this act." 2011 Nev. Stat., ch. 311, § 6(3), at 1748 (emphasis added). That is, NRS 40.495(4) became operative upon passage and approval by the Governor for any claims "commenced on or after" June 10, 2011, regardless of the specific hour that the Governor signed the bill.

Therefore, because I concur in part, and dissent in part, I would reverse and remand this case to the district court to determine the fair value defenses created by NRS 40.495(4).

_____, C.J.
Hardesty

I concur:

_____, J.
Saitta