134 Nev., Advance Opinion 2

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KAZUO OKADA; ARUZE USA, INC.;
UNIVERSAL ENTERTAINMENT
CORPORATION; AND ELAINE P.
WYNN,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ELIZABETH GOFF GONZALEZ,
Respondents,
and
WYNN RESORTS, LIMITED; AND
ROBERT J. MILLER,
Real Parties in Interest.

No. 74326





JAN 11 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order denying a motion to compel discovery.

*Petition granted.*

Morris Law Group and Steve L. Morris, Akke Levin, and Rosa Solis-Rainey, Las Vegas,
for Petitioners Aruze USA, Inc.; Kazuo Okada; and Universal Entertainment Corporation.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Abraham G. Smith, Las Vegas; Greenberg Traurig, LLP, and Mark E. Ferrario and Tami D. Cowden, Las Vegas; Sidley Austin, LLP, and James M. Cole, Washington, D.C., and Scott D. Stein, Chicago, Illinois, for Petitioner Elaine P. Wynn.

18-01501

Pisanelli Bice, PLLC, and Todd L. Bice, James J. Pisanelli, and Debra L. Spinelli, Las Vegas,
for Real Parties in Interest Wynn Resorts, Limited, and Robert J. Miller.

---

BEFORE THE COURT EN BANC.[1]

### OPINION

By the Court, HARDESTY, J.:

In this opinion, we consider whether the gaming privilege in NRS 463.120(6), which protects certain information and data provided to the gaming authorities, applies to information requested before the effective date of the statute. NRS 463.120(6) was enacted in 2017 through Senate Bill 376, which provides that the privilege applies to "any request made on or after the effective date of this act." We conclude from the plain language of the act that the privilege applies prospectively only and does not apply to any request made before the effective date of this act. Here, the district court applied the privilege to deny a motion to compel discovery where the information was requested through discovery before the effective date of NRS 463.120(6), but the motion to compel was filed after that date. This was erroneous, as the pertinent inquiry for determining whether the privilege applied to the information was the date of the initial discovery request seeking that information, not the date the requesting party sought an order from the court to compel the opposing party to comply with that discovery request. Because the discovery requests in this case were made

---

[1]The Honorable Ron D. Parraguirre, Justice, and the Honorable Kristina Pickering, Justice, voluntarily recused themselves from participation in the decision of this matter.

before the statute became effective, the gaming privilege in NRS 463.120(6) did not apply to the information sought by those discovery requests. Accordingly, we grant the petition for a writ of mandamus.

## FACTS AND PROCEDURAL HISTORY

This writ petition arises from litigation between real party in interest Wynn Resorts, Limited, and petitioners Kazuo Okada, Aruze USA, Inc., and Universal Entertainment Corporation (collectively the "Okada Parties"), pertaining to the removal of Okada from Wynn Resorts' board of directors and the forced redemption of his ownership in the stock of Wynn Resorts in February 2012. Before Okada's removal and forced redemption, Wynn Resorts investigated Okada's business dealings in the Philippines to determine whether those dealings rendered him unsuitable to be on the board of directors. In November 2011, Wynn Resorts' board of directors hired former federal judge and FBI director Louis J. Freeh and his firm (the Freeh Group) to investigate Okada's alleged misconduct and report their findings to the board of directors. The board of directors was advised of the results of the Freeh Group's investigation and made the decision to redeem all of the stock shares owned by Okada (through Aruze and its parent company Universal) on February 18, 2012. The next day, Wynn Resorts filed a complaint against the Okada Parties for declaratory relief, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. The Okada Parties filed counterclaims seeking declaratory relief and a permanent injunction rescinding the redemption of the stock and alleged claims for breach of contract, breach of Wynn Resorts' articles of incorporation, and various other tort-based causes of action.

In August 2014, the Okada Parties served on Wynn Resorts a request for production of documents concerning communications by Wynn Resorts with the Nevada Gaming Control Board (NGCB) about Okada.

These communications were alleged to have taken place during Wynn Resorts' investigation into Okada's alleged misconduct, sometime between November 2011 and February 13, 2012. The Okada Parties sought these communications to show that Wynn Resorts' justification for the redemption—that Wynn Resorts' gaming license was at imminent risk with the Nevada gaming authorities based on the Freeh Group's report about Okada's illegal conduct—was false. In February 2016, the Okada Parties deposed Wynn Resorts' director Robert Miller and sought details regarding the communications he had with the NGCB in late 2011 and early 2012, but Miller's counsel claimed that information was privileged and instructed Miller not to provide specifics about the communications. Miller's deposition was not completed, the Okada Parties sought and were granted additional time to complete it, and the deposition was scheduled to resume in October 2017.

In September 2017, the Okada Parties filed a motion to compel Miller's testimony and for production of documents regarding Miller's pre-redemption communications with the NGCB. In opposition, Wynn Resorts claimed that the discovery sought by the Okada Parties was protected by the "absolute privilege" in NRS 463.120(6), which grants licensees and applicants the privilege to refuse to disclose any information or data communicated to the NGCB in connection with its regulatory, investigative, or enforcement authority. The Okada Parties argued that the privilege in NRS 463.120(6) did not apply because the requests for testimony and documents had been made over a year before the statute's effective date of June 12, 2017, and the statute was not retroactive. Specifically, they asserted that they had requested the production of documents in August 2014, they had attempted to depose Miller and obtain documents in

SUPREME COURT
OF
NEVADA

(O) 1947A

4

February 2016, and they had served Wynn Resorts with interrogatories in April 2017 requesting information on the communications. The district court held a hearing on the motion to compel and denied it, determining that NRS 463.120(6) applied to the motion to compel because the motion was being heard after the effective date of the statute, and that the documents and testimony were confidential and privileged pursuant to NRS 463.120(6). The Okada Parties then filed this petition challenging the district court's order denying the motion to compel discovery.[2]

## DISCUSSION

The decision to entertain a writ petition lies solely within the discretion of this court. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). "A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, or to control a manifest abuse or an arbitrary or capricious exercise of discretion."[3] *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 907-08 (2008) (internal quotation marks omitted). Mandamus is an extraordinary remedy, available only when there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; *see also D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 474, 168 P.3d 731, 736 (2007). Because discovery orders may be challenged on direct appeal from any adverse judgment, we ordinarily

[2]Elaine P. Wynn, a party to the underlying litigation, joins in this writ petition.

[3]The Okada Parties alternatively seek a writ of prohibition; however, a writ of mandamus is more appropriate in this case because the district court did not exceed its jurisdiction in declining to order the production of discovery. *See* NRS 34.320 (providing that a writ of prohibition may issue when the district court acts "without or in excess of [its] jurisdiction").

SUPREME COURT
OF
NEVADA

(O) 1947A

will decline to review such orders through writ petitions. However, we have recognized on occasion that the availability of a direct appeal from a final judgment may not always be an adequate and speedy remedy. *D.R. Horton*, 123 Nev. at 474-75, 168 P.3d at 736 ("Whether a future appeal is sufficiently adequate and speedy necessarily turns on the underlying proceedings' status, the types of issues raised in the writ petition, and whether a future appeal will permit this court to meaningfully review the issues presented."). Thus, consideration of a writ petition may be appropriate "when an important issue of law needs clarification and sound judicial economy and administration favor the granting of the petition." *Nev. Yellow Cab Corp. v. Eighth Judicial Dist. Court*, 132 Nev., Adv. Op. 77, 383 P.3d 246, 248 (2016) (internal quotation marks omitted); *see also Aspen Fin. Servs., Inc. v. Eighth Judicial Dist. Court*, 129 Nev. 878, 882, 313 P.3d 875, 878 (2013) (exercising discretion to entertain a discovery-related writ petition because it "provides a unique opportunity to define the precise parameters of a statutory privilege that this court has not previously interpreted" (internal quotation marks omitted)).

Further, we have exercised our discretion to review a discovery order where the district court failed to apply a privilege and required the production of privileged information. *See, e.g., Valley Health Sys., LLC v. Eighth Judicial Dist. Court*, 127 Nev. 167, 171-72, 252 P.3d 676, 679 (2011) (explaining that a writ may issue to prevent improper discovery that would result in irreparable harm). We recognize that this petition presents the opposite situation—here, the challenged order *applied* a privilege to *prevent* the disclosure of allegedly privileged information. Nevertheless, we conclude that the circumstances of this case warrant a departure from our usual policy of declining to review a discovery order by extraordinary writ.

Notably, the discovery inquiries were made early in the litigation, well before the set trial date, and are "reasonably calculated to lead to the discovery of admissible evidence" on an important issue in this case. NRCP 26(b)(1). Given these factors and particularly the impact the challenged discovery order may have on the Okada Parties' ability to prove or defend against claims at trial, we conclude that consideration of the writ petition is necessary so that the discovery dispute may be addressed in a timely manner. Moreover, this petition presents us with the first opportunity to consider the application of the new gaming privilege in NRS 463.120(6), which is an important issue of law that could potentially affect other litigants statewide. We emphasize that generally this court will not consider writ petitions challenging orders denying discovery, as such discretionary rulings typically may be adequately redressed on direct appeal from an adverse final judgment. But, here, we choose to exercise our discretion to consider the narrow issue presented in this petition in the interest of sound judicial economy and to provide clarification on an important legal issue.

The issue presented in the petition is whether the district court properly applied the gaming privilege in NRS 463.120(6) when discovery requests were made before the effective date of the statutory privilege but a motion to compel the discovery was filed after the effective date of the statute. This issue involves statutory interpretation, which is a question of law that we review de novo. *Las Vegas Sands Corp. v. Eighth Judicial Dist. Court*, 130 Nev. 643, 650, 331 P.3d 905, 909 (2014). Where a statute is clear on its face, this court must give effect to the plain language without resorting to rules of statutory construction. *Jones v. Nev. State Bd. of Med. Exam'rs*, 131 Nev., Adv. Op. 4, 342 P.3d 50, 52 (2015). This court

SUPREME COURT
OF
NEVADA

(O) 1947A

7

"presume[s] that the Legislature intended to use words in their usual and natural meaning." *McGrath v. State, Dep't of Pub. Safety*, 123 Nev. 120, 123, 159 P.3d 239, 241 (2007).

The gaming privilege codified in NRS 463.120(6) was enacted by the 2017 Legislature through Senate Bill (SB) 376. The statute reads:

> Notwithstanding any other provision of state law, if any applicant or licensee provides or communicates any information and data to an agent or employee of the Board or Commission in connection with its regulatory, investigative or enforcement authority:

> (a) All such information and data are confidential and privileged and the confidentiality and privilege are not waived if the information and data are shared or have been shared with an authorized agent of any agency of the United States Government, any state or any political subdivision of a state or the government of any foreign country in connection with its regulatory, investigative or enforcement authority, regardless of whether such information and data are shared or have been shared either before or after being provided or communicated to an agent or employee of the Board or Commission; and

> (b) The applicant or licensee has a privilege to refuse to disclose, and to prevent any other person or governmental agent, employee or agency from disclosing, the privileged information and data.

2017 Nev. Stat., ch. 567, § 1.4, at 4065. The effective date of SB 376 is June 12, 2017—the date of "passage and approval" of the act. 2017 Nev. Stat., ch. 567, § 3, at 4066. Though not included in the codified statute, language in Section 2 of SB 376 expressly provides that the privilege is to be applied prospectively from the act's effective date:

> The confidentiality and privilege set forth in the amendatory provisions of this act *apply to any request made on or after the effective date of this act* to obtain any information or data, as defined in section 1.4 of this act, that is or has been provided or communicated by an applicant or licensee to an agent or employee of the Nevada Gaming Control Board or the Nevada Gaming Commission in connection with its regulatory, investigative or enforcement authority.

2017 Nev. Stat., ch. 567, § 2, at 4066 (emphasis added).

The parties acknowledge that the plain language of the act demonstrates that the privilege set forth in NRS 463.120(6) applies prospectively to any request made on or after June 12, 2017, the effective date of the act. However, they disagree as to the meaning of "any request."[4] The Okada Parties interpret "any request" as including any *discovery request* and contend that because they made their discovery requests for specific information and documents to Miller before the gaming privilege became effective, the privilege did not apply to the information they sought. In contrast, Wynn Resorts contends that the language "any request" means any attempt to obtain the privileged information. Thus, argues Wynn Resorts, when the Okada Parties attempted to obtain the information in September 2017 by filing a motion to compel with the district court, the privilege applied to bar the district court from ordering disclosure of the information.

---

[4]The parties also argue about whether NRS 463.120(6) may be applied retroactively. We do not consider the issue of retroactivity because SB 376 provides clear legislative intent that the statute be applied prospectively. *See Sandpointe Apartments, LLC v. Eighth Judicial Dist. Court*, 129 Nev. 813, 828, 313 P.3d 849, 858-59 (2013) (explaining that legislative intent controls whether a statute may be applied retroactively).

The term "request" is not defined in SB 376 or elsewhere in NRS Chapter 463. In determining the plain meaning of "request," we may consult dictionary definitions. "Request" is commonly defined as "[a]n act of asking for something." *The American Heritage Dictionary of the English Language* 1492 (5th ed. 2011); *see also Merriam-Webster's Collegiate Dictionary* 1058 (11th ed. 2014) (defining "request" as "the act or an instance of asking for something"). A discovery request, whereby one party uses NRCP 26(a)'s discovery methods to ask for information from another party or person, falls within this definition. *See* NRCP 26(a) (setting forth the various discovery methods). Given this common understanding of "request," we conclude that the Legislature intended the term to encompass a request for discovery.

Wynn Resorts asks us to disregard the discovery requests made by the Okada Parties and instead focus only on the motion to compel discovery, which Wynn Resorts contends was the sole "request" at issue before the district court. Because that motion was filed after the effective date of NRS 463.120(6), Wynn Resorts claims that the statutory privilege applied and barred the district court from compelling discovery of the privileged information. We reject Wynn Resorts' characterization of a motion to compel discovery as a "request . . . to obtain any information or data," 2017 Nev. Stat., ch. 567, § 2, at 4066. A motion to compel discovery is an enforcement mechanism used when someone fails to comply with a discovery request. *See generally* NRCP 37 (providing procedure for failure to cooperate in discovery). It is clear from the language in NRCP 37(a) that a motion to compel discovery is not a separate, independent "request" for information but rather is an application to the court for an order compelling cooperation with a preexisting "request." Significantly, though the word

Supreme Court
OF
Nevada

(O) 1947A

10

"request" may be found in NRCP 37(a), it is used only in the context of a discovery request. *See, e.g.*, NRCP 37(a)(2)(B) (setting forth procedure for when a party fails to respond to a "request for inspection" or fails to "permit inspection as requested"); NRCP 37(a)(4) (setting forth sanctions where the "requested discovery is provided after the motion [to compel] was filed").

Thus, under the plain language of SB 376, the gaming privilege in NRS 463.120(6) does not apply to information that was requested through discovery before the statute became effective. And the date a motion to compel is filed is irrelevant to the question of whether the statutory privilege applies; rather, the germane date is that of the original discovery request for the information, which in this case was before the statute became effective. Because the Okada Parties made the discovery requests before the privilege became effective, the privilege does not apply to the information sought in those discovery requests.

We therefore conclude that the district court erred in applying the statutory privilege and denying the motion to compel discovery on this basis. Accordingly, we grant the petition for writ relief and direct the clerk of this court to issue a writ of mandamus directing the district court to set aside the order denying the motion to compel testimony and documents

relating to communications with the Nevada Gaming Control Board on the basis that the information was protected by NRS 463.120(6).[5]

_____, J.
Hardesty

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Stiglich

---

[5]Wynn Resorts argues that other privileges or grounds for nonproduction exist to preclude discovery of the information sought by the Okada Parties and also that the information sought is not relevant to any claims or defenses. Because the district court did not consider the relevancy of the information or any privilege or ground other than NRS 463.120(6)'s gaming privilege in denying the motion to compel, we decline to consider those arguments in the first instance. We note that nothing precludes the district court from considering other bases raised by Wynn Resorts for denying the motion to compel.

SUPREME COURT
OF
NEVADA

(O) 1947A