OPINION
By the Court,
Hardesty, J.:
In this original petition for extraordinary relief, we examine statutory provisions that afford remedies to whistleblowers who are retaliated against for lawfully disclosing information regarding purportedly fraudulent activity in furtherance of Nevada’s False Claims Act[1] (FCA). In particular, we address whether the FCA’s anti-retaliation remedies are limited to those whistleblower employees whose employers pressured or attempted to pressure them into participating in the reported fraudulent activity.
In the underlying matter, a former employee filed a complaint for FCA whistleblower protections, alleging that his employer had retaliated against him for disclosing allegedly fraudulent activity. The employee, however, did not allege that his employer had pressured or attempted to pressure him into participating in the reported activity. In a motion to dismiss the employee’s complaint, the employer argued that dismissal was required because, under NRS 357.250(2)(b), the employee was not entitled to recover unless he asserted and proved that the employer had in some manner pressured him to participate in the allegedly fraudulent activity. When the district court denied the motion to dismiss, the instant petition for a writ of mandamus followed.
Thus, in this writ petition, we are asked to compel the district court to dismiss a whistleblower complaint seeking protections against retaliatory employment actions that purportedly resulted from an employee’s lawfhl disclosure of allegedly fraudulent activity. But the statute under which dismissal is sought, NRS 357.250(2)(b), applies only when the employee has actually participated in the purportedly fraudulent activity, thereby preventing *196 any such employee from recovering unless he or she can show that the employer pressured him or her into that activity. As a result, the employee here was not obliged to allege in his complaint that his employer pressured him to participate in fraudulent activity. Instead, such an assertion of employer pressure becomes necessary for recovery only upon a showing that the employee participated in the fraudulent activity. Accordingly, we deny this petition.

PROCEDURAL HISTORY AND FACTS

Before filing the underlying whistleblower protection complaint, real party in interest James McAndrews worked for petitioner International Game Technology, Inc. (IGT). While working for IGT, McAndrews came to believe that IGT falsified tax records in order to fraudulently conceal or decrease the amount of sales and use tax it owed to the state, and he therefore instituted a district court action under Nevada’s FCA to recover for the state and himself the monies allegedly owed.[2] Ultimately, we issued an opinion regarding McAndrews’ action, determining that, because the Nevada tax department has primary responsibility over the revenue statutes and McAndrews’ claims merely connoted his disagreement with IGT’s interpretation of those statutes, McAndrews had failed to state a claim under the FCA.[3] Accordingly, we directed the district court to dismiss McAndrews’ FCA action.[4]
After our opinion issued, McAndrews filed the underlying whistleblower protection complaint against IGT, based on the FCA’s anti-retaliation provisions, NRS 357.240 (describing prohibited employer actions) and 357.250 (governing employer liability). According to McAndrews’ complaint, immediately after he filed the earlier FCA action, IGT responded by suspending all of his work-related duties and barring him from its premises, except to receive paychecks. His employment remained suspended, McAndrews alleged, until we issued the opinion resolving his FCA action, at which time his employment was terminated. McAndrews asserted that, in suspending and terminating his employment, IGT had retaliated against him for filing the FCA action, in violation of the FCA’s anti-retaliation provisions.
IGT moved to dismiss the whistleblower protection complaint, arguing that NRS 357.250(2)(b) holds an employer liable only if it harassed, threatened with demotion or termination, or otherwise coerced the complaining employee into participation in fraudulent activity, and McAndrews had not alleged that IGT had in any way pressured him into participating in the asserted fraudulent activity. *197 McAndrews opposed dismissal, arguing that IGT’s interpretation led to an absurd result.
In response to the parties’ arguments, the district court interpreted NRS 357.250(2)(b) as ambiguous and then, based on legislative intent, construed the statute to require only that an employee be harassed or threatened with termination or demotion in order to recover. Consequently, the court denied the motion to dismiss, and IGT filed the instant petition for a writ of mandamus.

DISCUSSION

A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station[5] or to control an arbitrary or capricious exercise of discretion.[6] Writ relief is not available, however, when an adequate and speedy legal remedy exists.[7] Accordingly, because an appeal from the final judgment typically constitutes an adequate and speedy legal remedy, we generally decline to consider writ petitions that challenge interlocutory district court orders denying motions to dismiss.[8]
Even when writ relief is available because an appeal from the final judgment is not an adequate and speedy legal remedy, this court’s general policy, as stated in State ex rel. Department of Transportation v. Thompson,[9] is to decline to consider writ petitions challenging district court orders denying motions to dismiss because such petitions rarely have merit, often disrupt district court case processing, and consume an “enormous amount” of this court’s resources. Nonetheless, we have indicated that we will consider petitions denying motions to dismiss when either (1) no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule, or (2) an important issue of law needs clarification and considerations *198 of sound judicial economy and administration militate in favor of granting the petition.[10]
In this case, an appeal is not an adequate and speedy legal remedy, given the early stages of litigation and policies of judicial administration.[11] Moreover, as the parties suggest, this petition raises an important legal issue in need of clarification, involving public policy, of which this court’s review would promote sound judicial economy and administration. Accordingly, we will exercise our discretion and consider this petition to address the following question of statutory construction: does NRS 357.250(2)(b) limit FCA anti-retaliation remedies to situations in which the employer pressured or attempted to pressure the whistleblower into participating in fraudulent activity? Statutory interpretation is a question of law that we review de novo, even in the context of a writ petition.[12]

The FCA’s anti-retaliation statutes, NRS 357.240 and NRS 357.250

As we have previously recognized, the FCA’s purpose is to expose and combat attempted fraud against the government; through it, private citizens are encouraged to disclose information regarding wrongful claims for governmental funds.[13] Modeled after the corresponding federal act,[14] Nevada’s FCA entitles the private plaintiff to between 15 and 50 percent of any recovery and certain whistleblower protections.[15]
Two FCA whistleblower protection statutes are pertinent to this matter: NRS 357.240 and 357.250. The first statute, NRS 357.240, proscribes two types of employer actions. In subsection 1, employers are prohibited from adopting or enforcing rules that prevent employees from disclosing information or otherwise acting to further FCA purposes. The second part of that statute, NRS 357.240(2), bars employers from retaliating against employees for actions taken to further FCA purposes: “[a]n employer shall not discharge, demote, suspend, threaten, harass, deny promotion to or otherwise discriminate against an employee . . . because of lawful *199 acts done by him ... in disclosing information ... in furtherance of an action pursuant to this chapter.”
The other statute, NRS 357.250, with emphasis added, then describes employer liability for the retaliatory conduct prohibited by NRS 357.240(2):
Liability of employer for violations of NRS 357.240; entitlement of employee to remedies.
1. An employer who violates subsection 2 of NRS 357.240 is liable to the affected employee in a civil action for all relief necessary to make him whole. . . .
2. An employee is entitled to the remedies provided in subsection 1 only if:
(a) He voluntarily disclosed information ... or voluntarily acted in furtherance of an action pursuant to this chapter; and
(b) He was harassed, threatened with termination or demotion, or otherwise coerced by his employer into any participation in fraudulent activity.
Thus, NRS 357.240 prohibits an employer from retaliating against an employee for his lawful, FCA-related actions, and NRS 357.250 imposes liability for such retaliatory conduct. We conclude that subsection 2 of NRS 357.250, however, qualifies or limits the liability imposed in subsection 1 by providing that an employee may recover for retaliatory conduct only if (a) the employee voluntarily engaged in the protected whistleblower activity, and (b) to the extent he participated in any fraudulent activity, his employer pressured him to do so.[16]

NRS 357.250(2) qualifies who may recover under the anti-retaliation provision, NRS 357.250(1)

According to IGT’s interpretation of the qualification or limitation in NRS 357.250(2)(b), however, an employee is entitled to FCA anti-retaliation remedies only upon pleading and showing that his employer pressured (“harassed, threatened with termination or demotion, or otherwise coerced’ ’) him into participating in the asserted fraudulent activity. IGT thus contends that the subsection focuses on the employer’s actions, interpreting the statute to require McAndrews to plead and show that IGT at least attempted to pressure him into acting fraudulently (by falsifying or submitting false tax records) before he may recover. Since McAndrews did not allege that IGT pressured him into falsifying, *200 or submitting falsified, tax records, IGT argues, he failed to state a claim upon which relief can be granted, and thus the district court was obligated to dismiss his complaint.
Although IGT’s interpretation of NRS 357.250(2)(b) is plausible, another reading is more apparent: if the employee participated in fraudulent activity, he cannot recover unless his employer pressured him to do so, but if the employee did not participate in any fraudulent activity, the subsection does not apply and he need not show employer pressure.
To explain, NRS 357.240(1) provides that employers must not adopt any rules that would prevent employees from disclosing false claims information, and NRS 357.240(2) states that employers may not take negative action against any employee who lawfiilly discloses such information. According to NRS 357.250(1), employers that violate NRS 357.240(2) by taking negative action against employees who disclose false claims information are “liable to the affected employee in a civil action for all relief necessary to make him whole.” NRS 357.250(2)(b) then goes on to state that the NRS 357.250(1) remedies are available “only if” the employee “was harassed, threatened with termination or demotion, or otherwise coerced by his employer into any participation in fraudulent activity.”
The import of this latter sentence is any participation by the employee in fraudulent activity. When read in context, the sentence explains that if the employee participated in fraudulent activity, then he can recover under NRS 357.250(1) only if he shows that he was harassed, threatened, or coerced into such participation. Otherwise, employees who participate in fraud are not entitled to the statutory remedy set forth in NRS 357.250(1).
Resolving the ambiguity in NRS 357.250 as IGT suggests so that it applies only to employers that have harassed, threatened, or coerced employees into fraudulent activity would require us to disregard several key tenets of statutory construction. Under those tenets, an ambiguous statute must be interpreted in accordance with what reason and public policy indicate the Legislature intended.[17] The public policy behind the legislation may be discerned from the entire act, and a statute’s provisions should be read as a whole, so that no part is rendered inoperative[18] and, when *201 possible, any conflict is harmonized.[19] Finally, remedial statutes, like NRS 357.250, should be liberally construed to effectuate the intended benefit.[20]
First, the policy behind the NRS 357.240 provisions, when they are considered together, is to prevent employers both from precluding lawful FCA disclosures and from taking retaliatory employment action against employees who make such lawful disclosures.[21] Reading NRS 357.250(2)(b) as providing a remedy only to those employees who were harassed, threatened, or coerced into fraudulent activity would effectively leave employers who simply take negative employment action against their employees, in violation of NRS 357.240(2), free from liability. This construction would not further the policy behind the statutory scheme.
Additionally, as noted, no part of a statute should be rendered inoperative. Limiting NRS 357.250(l)’s remedial provisions to those employees who have been pressured into participating in fraudulent activity would render a significant portion of that provision inoperative, as it expressly provides a remedy for NRS 357.240(2) violations, broadly signifying that employers who take negative action against employees who have acted lawfully under the FCA are “liable to the affected employee in a civil action for all relief necessary to make him whole.” Thus, its provisions were meant to apply to any such negative employer actions, whether or not harassment, threats, or coercion occurred.
*202 Finally, if the protections provided in NRS 357.240 and the remedies afforded under NRS 357.250 are viewed as conflicting, they must be harmonized. This harmony is easily achieved if NRS 357.250(2) is read as requiring any employee who participated in fraudulent activity to show that he was harassed, threatened, or coerced into doing so before he is allowed to recover, yet not prohibiting recovery by any employee who did not participate in fraudulent activity but who was nonetheless retaliated against for making lawful FCA-related disclosures.
Reading NRS 357.250(2) as precluding employees from the statutory remedy if they participated in fraudulent activity unless they can show that they were harassed, threatened, or otherwise coerced into doing so comports with the rules of statutory construction and, most importantly, effectuates the Legislature’s policy in enacting these statutes to protect employees who have acted lawfully under the FCA.[22] Given this whistleblower protection policy, it is also a more reasonable result. As we have recognized, “[a] fundamental rule of statutory interpretation is that the unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another that would produce a reasonable result.”[23] Thus, under NRS 357.250(2)(b), if the employee engaged in fraudulent activity, he can recover under NRS 357.250 “only if’ ’ he was harassed, threatened, or coerced by the employer into the fraudulent activity in the first instance.
Because this subsection simply negates IGT’s liability if McAndrews participated in fraudulent activity without having been pressured by IGT to do so, and since, in his complaint, McAndrews did not assert that he had participated in fraudulent activity, McAndrews was not required to allege that IGT pressured him into participating in any fraudulent activity. As a result, the district court properly denied IGT’s motion to dismiss McAndrews’ complaint.

CONCLUSION

Although NRS 357.250(2)(b) prevents an employee who participated in fraudulent activity from recovering under the FCA’s anti-retaliation provisions unless that employee shows that his employer pressured him into the fraudulent activity in the first place, it does not limit recovery to only those employees whose employers pressured them into such activity. Instead, it simply does not apply to *203 employees who did not engage in fraudulent activity. As a result, an employee who did not participate in any fraudulent activity may recover simply by alleging and proving that his employer retaliated against him, in violation of NRS 357.240(2), for lawfully disclosing FCA information. Accordingly, here, even though McAndrews’ complaint did not allege that IGT even attempted to pressure him into fraudulent activity, the district court was not obliged to dismiss the complaint. Consequently, as IGT is not entitled to the extraordinary relief requested, we deny this writ petition.
Gibbons, C. J., Maupin, Parraguirre, Douglas, Cherry and Saitta, JJ., concur.

 NRS Chapter 357.

 See International Game Tech. v. Dist. Ct., 122 Nev. 132, 127 P.3d 1088 (2006).

 Id.

 Id.

 NRS 34.160; see also Smith v. District Court, 107 Nev. 674, 818 P.2d 849 (1991).

 Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981).

 NRS 34.170; D.R. Horton v. Dist. Ct., 123 Nev. 468, 474, 168 P.3d 731, 736 (2007).

 D.R. Horton, 123 Nev. at 474-75, 168 P.3d at 736 (noting that “[w]hether a future appeal is sufficiently adequate and speedy necessarily turns on the underlying proceedings’ status, the types of issues raised in the writ petition, and whether a future appeal will permit this court to meaningfully review the issues presented”).

 99 Nev. 358, 361-62, 662 P.2d 1338, 1340 (1983), cited with approval in Smith v. District Court, 113 Nev. 1343, 1345, 950 P.2d 280, 281 (1997).

 Smith, 113 Nev. at 1344-45, 950 P.2d at 281.

 See State ex rel. Dep’t Transp. v. Thompson, 99 Nev. at 361-62, 662 P.2d at 1340.

 D.R. Horton, 123 Nev. at 476, 168 P.3d at 737.

 International Game Tech. v. Dist. Ct., 122 Nev. 132, 138, 127 P.3d 1088, 1093-94 (2006).

 Id. at 150, 127 P.3d at 1101; see 31 U.S.C. §§ 3729-3733 (2000).

 International Game Tech., 122 Nev. at 138-39, 127 P.3d at 1093-94.

 The parties appear to agree with us that, syntactically, NRS 357.250(2)(b)’s “into any participation in fraudulent activity” clause modifies the terms “harassed, threatened, or coerced.”

 Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 642, 81 P.3d 532, 534 (2003).

 Williams v. Clark County Dist. Attorney, 118 Nev. 473, 484-85, 50 P.3d 536, 543-44 (2002); Matter of Estate of Thomas, 116 Nev. 492, 998 P.2d 560 (2000).

 Albios v. Horizon Communities, Inc., 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006); City Council of Reno v. Reno Newspapers, 105 Nev. 886, 784 P.2d 974 (1989).

 See Colello v. Administrator, Real Est. Div., 100 Nev. 344, 347, 683 P.2d 15, 17 (1984) (recognizing that “[statutes with a protective purpose should be liberally construed in order to effectuate the benefits intended to be obtained”); Shallal v. Catholic Social Services, 566 N.W.2d 571, 575 (Mich. 1997) (providing that remedial acts providing for whistleblower protection should be liberally construed in favor of the persons the acts were intended to benefit); see also International Game Tech. v. Dist. Ct., 122 Nev. 132, 155, 127 P.3d 1088, 1104-05 (2006) (noting that the FCA’s scope must be broadly construed, whenever possible, to accomplish the FCA’s purpose); So. Cal. Rapid Transit v. Superior Court, 36 Cal. Rptr. 2d 665, 672 (Ct. App. 1994) (stating that the California FCA, given its public purpose, should be broadly construed so as to give “the widest possible coverage and effect to the prohibitions and remedies provided”).

 See also, e.g., Hearing on S.B. 418 Before the Senate Government Affairs Comm., 70th Leg. (Nev., March 31, 1999) (recording senator comments and evidence considered by the Legislature that indicated that whistleblower protection, which would encourage potential FCA claimants to come forward by relieving fears of losing their jobs for reporting employer fraud, was essential for the FCA’s success); accord Hearing on S.B. 418 Before the Assembly Government Affairs Comm., 70th Leg. (Nev., May 5, 1999).

 See Hearing on S.B. 418 Before the Senate Government Affairs Comm., 70th Leg. (Nev., March 31, 1999) (providing a legislator’s comment that the FCA “would not work without a ‘whistleblower’ provision”).

 Sheriff v. Smith, 91 Nev. 729, 733, 542 P.2d 440, 443 (1975).