**134 Nev., Advance Opinion 7**

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE LAS VEGAS REVIEW-JOURNAL;
AND THE ASSOCIATED PRESS,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
RICHARD SCOTTI, DISTRICT JUDGE,
Respondents,
 and
VERONICA HARTFIELD, A NEVADA
RESIDENT; ESTATE OF
CHARLESTON HARTFIELD; AND
CLARK COUNTY OFFICE OF THE
CORONER/MEDICAL EXAMINER,
Real Parties in Interest.

No. 75073

**FILED**

FEB 27 2018



ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
 CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order granting a preliminary injunction.

*Petition granted.*

McLetchie Shell LLC and Margaret A. McLetchie and Alina M. Shell, Las Vegas,
for Petitioners.

Steven B. Wolfson, District Attorney, and Laura C. Rehfeldt, Deputy District Attorney, Clark County,
for Real Party in Interest Clark County Office of the Coroner/Medical Examiner.

Sgro & Roger and Anthony P. Sgro and Eunice M. Beattie, Las Vegas,
for Real Parties in Interest Veronica Hartfield and Estate of Charleston Hartfield.

SUPREME COURT
OF
NEVADA

(O) 1947A

18-07722

Randazza Legal Group, PLLC and Marc J. Randazza, Las Vegas, for Amici Curiae.

---

BEFORE PICKERING, GIBBONS, and HARDESTY, JJ.

*OPINION*

By the Court, PICKERING, J.:

The district court enjoined the Las Vegas Review-Journal and the Associated Press from reporting on a redacted, anonymized autopsy report that they and other members of the media obtained through a Nevada Public Records Act request. The question presented is whether the district court's preliminary injunction order comports with the First Amendment. We hold that it does not. While we are deeply sympathetic to the decedent's family's privacy concerns, the First Amendment does not permit a court to enjoin the press from reporting on a redacted autopsy report already in the public domain. We therefore grant the writ and vacate the preliminary injunction as an unconstitutional prior restraint.

I.

A.

On the night of October 1, 2017, a gunman opened fire on a crowd of concertgoers at the Route 91 Harvest music festival in Las Vegas, killing 58 people and injuring hundreds more. Within days, members of the media, including petitioners Las Vegas Review-Journal and the Associated Press (collectively, the Review-Journal), asked the Clark County Coroner for access to the shooter's and his victims' autopsy reports pursuant to the Nevada Public Records Act (NPRA), NRS Ch. 239. The Coroner denied the

media requests for the victims' autopsy reports, deeming them confidential. *See* NRS 239.010(1) (providing that confidential government records are not subject to public dissemination). On November 16, 2017, the Review-Journal filed suit against the Coroner under NRS 239.011, which gives a party who has been denied access to a public record the right to sue for an order requiring the government to provide a copy or permit inspection of it.

The district judge assigned to the NPRA case heard argument on January 30, 2018, after full briefing. At the end of the hearing, he orally ruled that the autopsy reports constituted public records subject to inspection and release but directed the Coroner to redact the victims' names and personal identifying information, which the Review-Journal conceded was appropriate. The next day, January 31, 2018, the Coroner released the victims' autopsy reports "with the names, Coroner case number, age and race redacted," emailing them first to the Review-Journal then, eight hours later, to the other news outlets that had requested them. The Review-Journal reported on the redacted autopsy reports immediately, Anita Hassan & Rachel Crosby, *Coroner Releases Autopsy Reports of 58 Victims from Las Vegas Shooting,* Las Vegas Review-Journal (Jan. 31, 2018, 4:50 p.m.), https://www.reviewjournal.com/crime/shootings/coroner-releases-autopsy-reports-of-58-victims-from-las-vegas-shooting, and other members of the press have done so since. *See, e.g.,* Stephen Sorace, *Las Vegas Shooting Victims' Info Released; Gunman's Data Excluded,* Fox News (Feb. 1, 2018), http://www.foxnews.com/us/2018/02/01/las-vegas-shooting-victims-autopsy-info-released-gunmans-data-excluded.html; *Fox 5 KVVU-TV* (Live news broadcast Feb. 1, 2018), http://www.fox5vegas.com/clip/14096105/coroner-delays-release-of-1-october-mass-shooter-autopsy (last visited Feb. 26, 2018); Nick Wing &

Matt Ferner, *Here Are the Autopsies for the Victims of the Las Vegas Mass Shooting*, Huffington Post (Feb. 15, 2018, 9:13 a.m.), https://www.huffingtonpost.com/entry/las-vegas-autopsy-documents_us_5a8234efe4b01467fcf08b97.[1]

### B.

One of the 58 murder victims was Charleston Hartfield, an off-duty Las Vegas Metropolitan Police Officer who had attended the Route 91 Harvest music festival with his wife, real party in interest Veronica Hartfield. On February 2, 2018, two days after the Coroner publicly released the redacted autopsy reports, Mrs. Hartfield and the Estate of Charleston Hartfield (collectively, the Hartfield Parties), filed a separate lawsuit against the Coroner and the Review-Journal. In their complaint, the Hartfield Parties sought: (1) a declaratory judgment that Mr. Hartfield's redacted autopsy report is confidential and, so, not subject to disclosure under the NPRA; and (2) an injunction barring the Review-Journal from disseminating or reporting on it.

The Hartfield Parties coupled their complaint with a motion for a temporary restraining order and preliminary injunction. The Coroner filed a notice of non-opposition, attaching his brief unsuccessfully urging confidentiality of autopsy records in the NPRA case. The Review-Journal opposed the Hartfield Parties' motion. In its opposition, the Review-Journal argued that the reports were redacted and therefore anonymized; that the report was among those already in the public domain pursuant to the order

---

[1]We deny the Hartfield Parties' February 16, 2018, motion to strike the Review-Journal's second supplemental appendix, which contains the Huffington Post article.

in the NPRA case; and that granting the motion would abridge its First Amendment freedoms and constitute an invalid prior restraint.

On February 9, 2018, the district judge heard argument on and orally granted the Hartfield Parties' motion for a preliminary injunction. The judge based his ruling on the Hartfield Parties' privacy interests, which he deemed fundamental. Placing the burden on the Review-Journal to demonstrate a "legitimate basis for why the public would need to have access to the redacted Hartfield autopsy report," the district court balanced the Hartfield Parties' privacy interests against what it declared to be the lack of newsworthiness of the redacted autopsy report and found the Hartfield Parties' privacy interests outweighed the Review-Journal's First Amendment interests. In the written order that followed, the district court ordered "that the Las Vegas Review Journal and the Associated Press are hereby restrained and barred from disclosing, disseminating, publishing, or sharing the redacted autopsy report of Mr. Hartfield, or any information of Mr. Hartfield therein." The district court dismissed the Review-Journal's concern that, because the autopsy reports were anonymized and redacted, it could not identify which report was Mr. Hartfield's. As a solution, it directed the Review-Journal to allow the Coroner and the Hartfield Parties to inspect the reports at the Review-Journal's offices, so that Mr. Hartfield's autopsy report could be identified and all copies of it returned or destroyed.

## II.

The Review-Journal filed an emergency petition for mandamus or prohibition with this court on February 12, 2018. In its petition, the Review-Journal challenges the district court's injunction as an invalid prior restraint of its First Amendment freedoms.

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights,"

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and are presumptively unconstitutional. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Although preliminary injunction orders are directly appealable, NRAP 3A(b)(3), and ordinarily, writ relief will not lie when a party can take a direct appeal, NRS 34.170; NRS 34.330; *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008), here the Review-Journal sought writ relief from the district court's *oral* preliminary injunction , which could not be appealed until a written order was entered. *Rust v. Clark Cty. Sch. Dist.*, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987) ("only a written judgment may be appealed"). Because the Review-Journal had no right of direct appeal when it filed its writ petition, and because a later appeal would not adequately remediate the harm complained of in this case, *see Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1304 (1983) ("It is clear that even a short-lived 'gag' order in a case of widespread concern to the community constitutes a substantial prior restraint and causes irreparable injury to First Amendment interests as long as it remains in effect."), we accepted the emergency petition for writ relief, ordered entry of a final written order by the district court and expedited briefing by the parties, and now proceed to address the petition on its merits. *See Johanson v. Eighth Judicial Dist. Court*, 124 Nev. 245, 249-50, 182 P.3d 94, 96-97 (2008) (accepting writ review of an order forbidding a party from disseminating information regarding an ongoing district court case, even though an appeal may lie later, in part because the remedy of an eventual appeal was neither speedy nor adequate under the circumstances).

III.

The district court's order enjoining the Review-Journal from reporting on the anonymized, redacted autopsy report it obtained from the Coroner pursuant to the order in the NPRA case constitutes an invalid prior

restraint that violates the First Amendment. Although the Supreme Court has not categorically invalidated orders imposing prior restraints on the press, *see Neb. Press*, 427 U.S. at 570, the proponent of such an order "carries a heavy burden of showing justification for the imposition of such a restraint." *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (quoting *Keefe*, 402 U.S. at 419). To justify a prior restraint, the interest the prohibition protects must be of the "highest order." *The Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989). Also, "[t]he restraint must be the narrowest available to protect that interest; and the restraint must be necessary to protect against an evil that is great and certain, would result from the reportage, and cannot be mitigated by less intrusive measures." *Colorado v. Bryant*, 94 P.3d 624, 628 (Colo. 2004) (citing *CBS Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J. in chambers)); *see Johanson*, 124 Nev. at 251, 182 P.3d at 98 (a prior restraint or "gag" order is only justified when "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (2) the order is narrowly drawn, and (3) less restrictive alternatives are not available") (quoting *Levine v. U.S. Dist. Court for Cent. Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985)).

The district court based its injunction order on the need to protect the Hartfield Parties' privacy interests. The record does not include the redacted autopsy reports, only the news accounts of them and affidavits from the NPRA case describing the Coroner's redactions. These documents suggest that the redacted reports include information relating to the shooting, such as the location of bullet wounds and the time and date of death, not personal identifying information. And, the case on which the injunction order relies—*Katz v. National Archives & Records*

SUPREME COURT
OF
NEVADA

(O) 1947A

7

*Administration,* 862 F. Supp. 476 (D.D.C. 1994)—concerned whether autopsy photographs and x-rays of former President John F. Kennedy were "agency records" subject to disclosure under the federal Freedom of Information Act, or personal presidential papers subject to restrictions on disclosure. It did not concern, as this case does, an order restraining the media from reporting on redacted autopsy reports already obtained from the state pursuant to court order.

For purposes of our analysis we assume, without deciding, that the Hartfield Parties had a protectable privacy interest in preventing disclosure of Mr. Hartfield's redacted autopsy report. Even making this assumption, the fact remains that the Review-Journal obtained the redacted autopsy reports from the Coroner before the Hartfield Parties sued to enjoin their production, and it did so pursuant to the court order entered in the NPRA case. The Hartfield Parties see it as unfair to hold the Review-Journal's possession of the redacted autopsy reports against them because they were not parties to and did not know about the NPRA case until the judge in that case ordered the reports produced. Mandatory Supreme Court precedent teaches, however, that where the press obtains private information from the state—even where the state should have protected the information—damages or criminal punishment may not be imposed for its subsequent publication, absent extraordinary circumstances. *Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 494-95 (1975) (holding that damages could not be recovered against a news organization for publishing the name of a rape-murder victim, in violation of a state criminal statute, where the reporter obtained the name by inspecting court documents the clerk provided him); *see The Fla. Star,* 491 U.S. at 535-36 (reversing a damage award in favor of rape victim whose name was gleaned from a report released by the police);

*Okla. Publ'g Co. v. Dist. Court*, 430 U.S. 308 (1977) (per curiam) (vacating a state court injunction prohibiting the media from publishing the name and photograph of an 11-year-old boy being tried in juvenile court where the juvenile court judge had permitted reporters and other members of the public to attend a hearing in the case, notwithstanding a statute closing such trials to the public). An injunction, if violated, can lead to contempt, so these cases apply here. Indeed, a prior restraint demands more exacting scrutiny than a damage award or criminal sanction, because a prior restraint freezes speech before it is uttered, whereas post-speech civil and criminal sanctions, while they chill speech, do not become fully operative until trial and appellate review have run their course. *See Neb. Press*, 427 U.S. at 559.

The prior publication of the redacted autopsy reports diminished the Hartfield Parties' privacy interests beyond the point of after-the-fact injunctive repair. *See Cox Broad.*, 420 U.S. at 494-95 ("the interests in privacy fade when the information involved already appears on the public record"); *Doe v. City of N.Y.*, 15 F.3d 264, 268 (2d Cir. 1994) ("Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record."); *McNally v. Pulitzer Publ'g Co.*, 532 F.2d 69, 77-78 (8th Cir. 1976) (relying on *Cox Broadcasting* to hold that there was no harm to any constitutional right of privacy when the information claimed to be private was already a matter of public record). Thus, the injunction did not, and could not as a matter of law, promote a state interest of the "highest order." *The Fla. Star*, 491 U.S. at 541. While the district court directed the Coroner to write letters advising other news organizations of its order, its order only restrained the Review-Journal and the Associated Press, requiring them to

SUPREME COURT
OF
NEVADA

(O) 1947A

9

destroy or return Mr. Hartfield's redacted autopsy report and enjoining them from reporting on it. Leaving other news organizations free to report on Mr. Hartfield's redacted autopsy report while restraining the Review-Journal and the Associated Press from doing so does not accomplish the stated goal of protecting the Hartfield Parties' privacy interests. *Cf. id.* at 540 ("When a State attempts the extraordinary measure of punishing truthful publication in the name of privacy, it must demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly, to the smalltime disseminator as well as the media giant.").

The district court placed the burden on the Review-Journal to defend the newsworthiness of the redacted autopsy reports. But it is the proponent of the prior restraint who must bear the heavy burden of justifying it. *N.Y. Times*, 403 U.S. at 714. Because the anonymized and redacted autopsy reports were already in the public domain, "[t]he harm that could have been prevented by the prior restraint has already occurred, and, because this harm has occurred, the heavy presumption against the constitutionality of a prior restraint has not been overcome." *Bryant*, 94 P.3d at 642 (Bender, J., dissenting). In other words, any damage to the Hartfields' privacy interests had already been done and the district court's subsequent order could not remedy that damage. Thus, the real parties in interest failed to demonstrate a serious and imminent threat to a protected competing interest that would warrant the prior restraint imposed in this case. *The Fla. Star*, 491 U.S. at 533-34.

*****

Accordingly, the district court's order does not pass constitutional muster, compelling writ relief. We therefore grant the

petition and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its preliminary injunction order.

_____Pickering_____, J.
Pickering

We concur:

_____Gibbons_____, J.
Gibbons

_____Hardesty_____, J.
Hardesty

Supreme Court
of
Nevada

(O) 1947A