# IN THE SUPREME COURT OF THE STATE OF NEVADA

TURNBERRY/SOUTH STRIP, LP, A NEVADA LIMITED PARTNERSHIP; AND TURNBERRY/CENTRA DEVELOPMENT, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE MARK R. DENTON, DISTRICT JUDGE,
Respondents,
   and
CENTRA PARK, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Real Party in Interest.

No. 77317

FILED

NOV 07 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
   DEPUTY CLERK

## *ORDER DENYING PETITION FOR WRIT OF PROHIBITION*

This is an original petition for a writ of mandamus or prohibition challenging a district court order granting partial summary judgment, which requires petitioner to disclose to real party in interest a confidential settlement agreement between the parties' LLC's subsidiary and other entities.

## *FACTS AND PROCEDURAL HISTORY*

Petitioner Turnberry/South Strip, LP (Turnberry) and real party in interest Centra Park, LLC (Centra) jointly own Turnberry/Centra Development, LLC (TCD), a Delaware LLC established to develop Town Square Las Vegas. Centra is the 30% owner of TCD and Turnberry is the

19·45871

70% owner and Managing Member of TCD. TCD is governed by an Operating Agreement. TCD wholly owns and manages Turnberry/Centra Office Quad, LLC (Office Quad). Office Quad wholly owns and manages Turnberry/Centra Office Sub, LLC (Office Sub), a subsidiary created by Turnberry and Centra to manage the business of the office space at the Town Square. Centra is thereby 30% owner of Office Sub.

In 2013, Office Sub signed a confidential settlement agreement with Lehman Brothers Holdings, Inc. (Lehman Brothers) and other third parties regarding a loan, but did not include Centra or TCD. The agreement resulted in the Town Square office space being seized as collateral. Centra made several written requests for documents related to TCD's operation, including the settlement agreement. Turnberry provided full access to TCD's books of account but refused to provide any documents related to the settlement agreement. Centra subsequently filed suit against Turnberry and TCD for specific performance, seeking disclosure of those documents under TCD's Operating Agreement. Centra moved for partial summary judgment. Following a hearing, the district court granted Centra's motion and ordered Turnberry and TCD to disclose to Centra a copy of the settlement agreement. The court found that Sections 5.3(u) and 7.1 of TCD's Operating Agreement permitted disclosure and that Turnberry and TCD's claim of confidentiality could not apply. This writ petition followed.

## DISCUSSION

### Writ relief is appropriate

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion, while a writ of prohibition is warranted when a district court

SUPREME COURT
OF
NEVADA

(O) 1947A

2

acts without or in excess of its jurisdiction. NRS 34.160; NRS 34.320; *Club Vista Fin. Servs. v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012); *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). Writ relief is generally not available when a petitioner has a plain, speedy, and adequate remedy at law, but this court may exercise its discretion to consider a writ petition when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Oxbow Constr., LLC v. Eighth Judicial Dist. Court*, 130 Nev. 867, 872, 335 P.3d 1234, 1238 (2014) (internal quotation marks and citation omitted); *see also* NRS 34.170; NRS 34.330. "This court may exercise its discretion to consider writ relief when presented with a situation where 'the assertedly privileged information would irretrievably lose its confidential and privileged quality and petitioners would have no effective remedy, even by later appeal.'" *Cotter v. Eighth Judicial Dist. Court*, 134 Nev. 247, 249, 416 P.3d 228, 231 (2018) (quoting *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 350-51, 891 P.2d 1180, 1183-84 (1995)).

We elect to entertain this petition for a writ of prohibition[1] because confidentiality is at stake.

*The district court did not err in compelling disclosure of the settlement agreement*

In considering this writ petition, we look to Delaware law because Section 12.5 of the parties' Operating Agreement provides that

---

[1]While petitioners seek both writs in the alternative, this court has acknowledged "a writ of prohibition is a more appropriate remedy than mandamus to correct an order that compels the disclosure of privileged information." *Cotter*, 134 Nev. at 249, 416 P.3d at 231.

Delaware law governs disputes between members. Under Delaware law, questions of law and the interpretation of contracts are reviewed de novo. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). Grants of specific performance are reviewed for an abuse of discretion. *Id.*

"Limited liability companies are creatures of contract," and LLC agreements should be construed like any other contract. *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 880-81 (Del. Ch. 2009). Delaware adheres to the "objective" theory of contracts and construes contracts by "that which would be understood by an objective, reasonable third party." *Osborn*, 991 A.2d at 1159. Delaware courts "will read a contract as a whole and . . . will give each provision and term effect, so as not to render any part of the contract mere surplusage." *Id.* The courts also "will not read a contract to render a provision or term meaningless or illusory." *Id.* (internal quotation marks and citation omitted); *see also E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) ("In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein.").

"When the contract is clear and unambiguous, [Delaware courts] will give effect to the plain meaning of the contract's terms and provisions." *Osborn*, 991 A.2d at 1159-60. However, when there are multiple reasonable interpretations, the contract is deemed ambiguous. *Id.* at 1160. Whether the contract is ambiguous is "within the sole province of the court." *Id.* "An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract." *Id.* The question here is one of contract interpretation.

Two provisions of the TCD Operating Agreement are at issue: Section 7.1, which discusses how the "Managing Member" (Turnberry) must

keep the books and records of the "Company" (TCD) for inspection by TCD's "Members" (Centra), and Section 5.3(u), which discusses Turnberry's power to create subsidiaries. Section 7.1 states:

> The Managing Member shall keep . . . true, exact and complete books of account of the Company's affairs, in which shall be entered fully and accurately *each transaction* of the Company *and of each entity which it controls*. The books of account shall be kept on a basis as determined by the Managing Member. *Such books of account, together with all correspondence, papers and other documents*, shall be kept at the principal office of the Company and shall be, at all reasonable times, *open to the examination of any of the Members* or their duly authorized representatives.

(Emphases added). Section 5.3(u) states that the "Managing Member" has the power to establish direct or indirect wholly-owned subsidiaries, but that:

> *[t]he creation of any subsidiary shall not impair the rights that any Member would otherwise have, under this Agreement or applicable law, if such subsidiary were not created* . . . . Notwithstanding anything contained herein to the contrary, the Company has held and will hold itself out as being a Person separate and apart from any other Person, including the Sub, and all limited liability company formalities have been and will be observed in accordance with the Act.[2]

(Emphases added).

Turnberry and TCD argue that Section 7.1 unambiguously permits Centra to only view TCD's "books of account," which does not

---

[2]The "Act" refers to the Delaware Limited Liability Company Act.

SUPREME COURT
OF
NEVADA

(O) 1947A

include a settlement agreement. They rely on *Madison Real Estate Immobilien-Anlagegesellschaft Beschrankt Haftende KG v. Kanam USA XIX Limited Partnership*, No. 2863-VCP, 2008 WL 1913237, (Del. Ch. May 1, 2018), to argue that "books of account" has a narrower interpretation than the commonly used phrase "books and records." The Delaware Chancery Court in *Madison* determined that Black's Law Dictionary's narrow definition of "books of account" as "[r]ecords of original entry maintained in the usual course of business by a shopkeeper, trader, or other businessperson" applied to the relevant provision in "[t]he General Partner shall cause complete and accurate *books of account* to be kept for the Partnership . . . . and the *books of accounts* shall be closed as of the end of the year." *Id.* at *11-12 (quoting *Black's Law Dictionary* 1412 (8th ed. 2004)). However, *Madison* is distinguishable because the language of the relevant provision in *Madison* differs from the language at issue here. While both use the phrase "books of account," Section 7.1 of TCD's Operating Agreement is not limited by the language "closed as of the end of the year." Instead, "books of account" is supplemented with the clause "together with all correspondence, papers, and other documents." Accordingly, we conclude that Centra is correct that this language broadens the scope of what documents are required to be available for examinations by TCD's members.

Turnberry and TCD conversely reason that "correspondence, papers and other documents" only referred to those of TCD as "the Company's affairs" and not those of entities it controlled, like Office Sub. Accordingly, they assert that the settlement agreement is not a correspondence, paper, or other document of TCD. That argument is contrary to the plain language of TCD's Operating Agreement. The phrase

"books of account" in Section 7.1 is partially defined as that "of the Company's affairs, *in which* shall be entered fully and accurately *each transaction* of the Company *and of each entity which it controls*" (emphases added). This language indicates that TCD's books of account must contain all transactions of TCD and any entity TCD controls.[3] When followed by the sentence that "such books of account," or previously referred to books of account, be available to Centra for inspection "together with all correspondence, papers and other documents," the plain language of Section 7.1 mandates that the confidential settlement agreement signed by Office Sub be available to Centra for inspection.

Turnberry and TCD also misconstrue the relevance of Section 5.3(u). They assert that the last sentence in 5.3(u) merely explains that any subsidiary should remain separate and distinct from TCD and therefore the district court's order impermissibly found that Office Sub was governed by the same Operating Agreement as TCD.[4] However, 5.3(u) plainly states

---

[3]TCD controls Office Quad, which controls Office Sub. TCD thereby controls Office Sub. Turnberry and TCD assert that under Section 5.4 of Office Sub's operating agreement, nonparty Office Quad—rather than TCD—"controls" Office Sub because Office Sub is a wholly-owned subsidiary of Office Quad. We consider this argument waived because it was not argued below. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

[4]Both parties also cite to *DFG Wine Company, LLC v. Eight Estates Wine Holdings, LLC* to support their own proposition on whether a parent company has the right to inspect the record of a wholly-owned subsidiary as an alter-ego based on Delaware's LLC Act. No. 6110-VCN, 2011 WL 4056371, at *6 (Del. Ch. Aug. 31, 2011). However, given our conclusion that the Operating Agreement explicitly provides for Centra's right to inspection

that the existence of a subsidiary should not impair a member's rights. Therefore, the existence of a subsidiary should not limit Centra's inspection rights under Section 7.1 to only documents of TCD.

Given that Centra owns 30% of TCD and thereby 30% of Office Sub, the only reasonable interpretation of Sections 5.3(u) and 7.1 is that Centra has a right to inspect a settlement agreement signed by an LLC that it owns a large percentage of. As "[t]he basic rule of contract construction gives priority to the intention of the parties," it would seem contradictory for Centra to intend otherwise. *E.I. du Pont de Nemours & Co.*, 498 A.2d at 1113. Any other interpretation would produce absurd results, particularly in light of Centra's allegation that the settlement agreement forfeited Office Sub's only asset—the Town Square office space.

Turnberry and TCD also contend that Centra is not entitled to the settlement agreement because TCD was not a party to the settlement agreement and the agreement included a confidentiality provision[5] relied upon by the parties to the agreement. In arguing that this court should

---

of the settlement agreement, we need not address whether TCD and Office Sub are alter-egos. Delaware law makes clear that the plain language of an LLC's Operating Agreement is controlling over any contrary language in the Delaware LLC Act, and the Delaware LLC Act governs only when LLC operating agreements are silent. *See* 6 Del. C. § 18-1101(b) ("It is the policy of [the Delaware LLC Act] to give the maximum effect to the principle of freedom of contract and the enforceability of limited liability company agreements."); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 291 (Del. 1999) ("The basic approach of the Delaware [LLC] Act is to provide members with broad discretion in drafting the Agreement and to furnish default provisions when the members' agreement is silent.").

[5]The only evidence in the record establishing the settlement agreement's confidential nature is an affidavit from Turnberry's general counsel.

respect confidentiality and honor the independence of corporate entities, they fail to support these contentions with any controlling Delaware authority. We therefore need not consider these claims. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

While Turnberry and TCD argue that the district court's ruling opens the door for parent companies to be able to compel disclosure of a subsidiary's confidential settlement agreement, we determine that the district court's ruling only interprets the language of TCD's Operating Agreement and would not have such a broad and sweeping effect. We therefore hold that the district court did not err in its granting of partial summary judgment and compelling petitioners to disclose the settlement agreement.

Accordingly, we ORDER the petition DENIED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

cc:    Hon. Mark R. Denton, District Judge
McNutt Law Firm
Sklar Williams LLP
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A