140 Nev., Advance Opinion 9

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

CHRISTOPHER L. IGTIBEN, M.D.;
DIGNITY HEALTH, d/b/a ST. ROSE
DOMINICAN HOSPITAL-SAN MARTIN
CAMPUS; DIGNITY HEALTH
MEDICAL GROUP NEVADA, LLC; AND
DIGNITY HEALTH HOLDING
CORPORATION,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
KATHLEEN E. DELANEY, DISTRICT
JUDGE,
Respondents,
and
LINDA F. SMITH; THE ESTATE OF
KAMARIO MANTRELL SMITH;
EDWARD GAXIOLA PONS; LATOYA
NICHOLE TURNER; K.M.S.;
LAWANDA DENISE HARRIS; K.A.S.;
AND K.A.S.,
Real Parties in Interest.

No. 86567-COA

FILED

FEB 22 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying a motion to dismiss a complaint in a professional negligence and wrongful death action.

*Petition granted.*

John H. Cotton & Associates, Ltd., and Adam Schneider and John H. Cotton, Las Vegas,
for Petitioner Christopher L. Igtiben, M.D.

24-06337

Hutchison & Steffen, PLLC, and Courtney Christopher and Brittany A. Lewis, Las Vegas,
for Petitioners Dignity Health, d/b/a St. Rose Dominican Hospital-San Martin Campus; Dignity Health Medical Group Nevada, LLC; and Dignity Health Holding Corporation.

Gallian Welker & Associates, L.C., and Nathan E. Lawrence, Michael I. Welker, and Travis N. Barrick, Las Vegas,
for Real Parties in Interest.

---

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

## OPINION

By the Court, BULLA, J.:

In this original writ proceeding, we take the opportunity to address the accrual date of professional negligence and wrongful death claims under the applicable statute of limitations, NRS 41A.097(2).[1] We emphasize that, unless there is an impediment to pursuing an action such as the concealment of medical records, once the plaintiff or the plaintiff's representative has received all necessary medical records documenting the relevant treatment and care at issue, inquiry notice of a claim commences. Here, real parties in interest were placed on inquiry notice when they received the decedent's medical records of Christopher Igtiben, M.D.'s treatment, which were in fact subsequently utilized by their expert to

---

[1]We originally resolved this petition in an unpublished order granting the petition and issuing a writ of mandamus. Petitioners subsequently filed a motion to publish the order as an opinion. We grant the motion and replace our earlier order with this opinion. *See* NRAP 36(f).

prepare his affidavit of merit. Because real parties in interest did not file their complaint until after the pertinent statute of limitations expired, the district court erred in failing to dismiss the complaint and writ relief is warranted.

## FACTS AND PROCEDURAL HISTORY

Kamario Mantrell Smith, an inmate, collapsed twice in prison, three weeks after an unsuccessful heart surgery. Following his second collapse, Kamario was transported to the San Martin Campus of St. Rose Dominican Hospital (San Martin), where he was admitted for shortness of breath, chest pains, and a rapid heart rate. On admission, it was believed that Kamario had sickle cell trait (SCT), and a peripheral blood smear test showed that Kamario's blood contained sickled cells.[2] Shortly after, petitioner Dr. Igtiben, an internal medicine hospitalist, ordered a contrast CT angiograph of Kamario's chest, abdomen, and pelvis, which detected a blood clot in his lung, an enlarged heart, fluid in his chest, and bilateral pneumonia. Kamario was placed on an anticoagulant, which initially

---

[2]A peripheral blood smear test provides health care providers with a microscopic view of red and white blood cells and platelets; while results from a peripheral smear test are not diagnostic, they may be used to assist health care providers in making diagnoses. *Peripheral Blood Smear*, Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/22742-peripheral-blood-smear-test (last visited Feb. 1, 2024).

A person with SCT carries the sickle cell gene but generally experiences no complications from the condition. *Questions and Answers About Sickle Cell Trait*, Nat'l Heart, Lung, and Blood Inst. (Sept. 22, 2010), https://www.nhlbi.nih.gov/news/2010/questions-and-answers-about-sickle-cell-trait. In contrast, individuals with sickle cell anemia (also known as sickle cell disease or SCD) have low hemoglobin levels and their red blood cells become misshapen and take on the sickle shape. *Id.* Over time, sickle cell anemia can cause damage to organs, including the brain, bones, lungs, kidneys, liver, and heart. *Id.*

stabilized him. However, the next day, his hemoglobin decreased, and he became hypotensive. Kamario rapidly lost kidney function and experienced renal failure. At this time, a diagnostic hemoglobin electrophoresis test confirmed Kamario had sickle cell anemia, rather than SCT.[3] The next morning, November 25, 2019, Kamario's heart stopped, and resuscitation efforts were unsuccessful.

On January 6, 2020, following Kamario's death, Kamario's mother, real party in interest Linda F. Smith (RPII), received his medical records from San Martin, which documented all the treatment and care provided by Dr. Igtiben at issue here. RPII also obtained a copy of the death certificate at some point, as evidenced by her attaching it to her May 12, 2020, probate filings. The death certificate listed the cause of death as "pulmonary infarction caused by a pulmonary embolism," with other significant conditions listed as "acute renal [kidney] failure, [SCT], hypertension and recurrent atrial fibrillation and atrial flutter." Although not included in the record, the parties agree that the autopsy report notated Kamario's manner of death to be "natural."

At the time of his death, Kamario had a civil rights action pending against the Nevada Department of Corrections (NDOC) in federal court, alleging NDOC's ongoing and continuing failure to properly treat or accommodate his atrial fibrillation and irregular heartbeat. On April 2, 2020, RPII moved to substitute in for Kamario as a party in the federal case.

---

[3]"Hemoglobin electrophoresis uses electrical charges to separate hemoglobin types so healthcare providers can compare the level of each type with normal levels." *Hemoglobin Electrophoresis*, Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/22420-hemoglobin-electrophoresis (last visited Feb. 1, 2024). This test is used to diagnose blood diseases such as sickle cell anemia. *Id.*

In the handwritten motion, RPII wrote, "I understand; I have to submit my Negligence Claim[ ] of Kamario Smith['s] Death. I understand that I need to pursue them in state court." At or near this time, RPII retained counsel to assist her, and on April 20, the federal court granted her motion to substitute in as a party.

In May 2020, the probate court in the Eighth Judicial District appointed RPII as special administrator of Kamario's estate. RPII listed the assets of the estate as consisting solely of two lawsuits: the above-mentioned civil rights lawsuit in federal court and a prospective wrongful death claim to be purportedly brought against NDOC either in the ongoing federal action or in state court.

Around September 2021, in relation to the federal lawsuit, RPII retained Lary Simms, D.O., a pathologist, to review Kamario's medical records.[4] In February 2022, Dr. Simms opined that Kamario's death was caused by exposure to the intravenous contrast Dr. Igtiben had ordered for the CT scan, which caused kidney failure due to Kamario's sickle cell anemia.[5] Approximately eight months later, on November 22, 2022, RPII filed a complaint in the Eighth Judicial District on behalf of Kamario's estate against petitioners Dignity Heath, d/b/a San Martin; Dignity Health Medical Group Nevada, LLC; Dignity Health Holding Corporation; and Dr. Igtiben, alleging professional negligence of a health care provider and

---

[4]The federal suit remained active until it apparently settled in or about February 2022.

[5]An intravenous contrast is an iodine-based medium injected into an individual's body to increase the density of blood, which allows for blood vessels to be viewed during a CT exam. David C. Rodgers & Prassana Tadi, *Intravenous Contrast*, Nat'l Library of Med., https://www.ncbi.nlm.nih.gov/books/NBK557794/ (last updated Mar. 13, 2023).

wrongful death. The complaint, which was supported by a declaration of merit by Dr. Simms, alleged that Dr. Igtiben's actions, as well as those of other petitioners, fell below the standard of care in failing to recognize that Kamario suffered from sickle cell anemia before ordering a CT with contrast, which ultimately caused Kamario's kidneys to fail, resulting in his death.

Dr. Igtiben moved to dismiss RPII's complaint, arguing in part that, pursuant to NRS 41A.097(2), the statute of limitations on RPII's claims had expired. The other petitioners joined in the motion to dismiss. The district court denied the motion, stating in part that a finder of fact could determine that the one-year statute of limitations under NRS 41A.097(2) did not begin to run until February 2022 when Dr. Simms formed his opinions. Subsequently, Dr. Igtiben filed the instant writ petition challenging the district court's order denying dismissal of the complaint against him. Dignity Health, d/b/a San Martin; Dignity Health Medical Group Nevada, LLC; and Dignity Health Holding Corporation joined as petitioners.

*ANALYSIS*

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179, P.3d 556, 558 (2008). This extraordinary relief may be available if the petitioner does not have a plain, speedy, and adequate remedy in the ordinary course of law. NRS 34.170; *see also Smith v. Eighth Jud. Dist. Ct.*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991) (recognizing that whether a writ of mandamus will be considered is within the appellate court's sole discretion).

Generally, this court will not consider a writ petition challenging an order denying a motion to dismiss because an appeal from a final judgment is an adequate and speedy legal remedy. *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558. However, we will consider petitions that challenge orders denying motions to dismiss if "either (1) no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule, or (2) an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Id.* at 197-98, 179 P.3d at 559. Because the facts relevant to the statute of limitations are not in dispute, and because the district court was obligated to dismiss the action pursuant to NRS 41A.097(2), we elect to exercise our discretion and entertain this writ petition.

NRS 41A.097(2) governs the limitations periods for professional negligence claims, stating in relevant part that "an action for injury or death against a provider of health care may not be commenced more than 3 years after the date of the injury or 1 year after the plaintiff discovers or through use of reasonable diligence should have discovered the injury, whichever occurs *first*."[6] (Emphasis added.) We recognize that, here, RPII's complaint was filed prior to the expiration of the three-year statutory period, but petitioners argue that the complaint was nonetheless barred by the earlier expiration of the one-year inquiry-notice limitations period.

---

[6]Recent amendments to NRS 41A.097 extend the statute of limitations for "injury to or wrongful death of a person" claims to two years after the plaintiff discovers or should have discovered the injury, but only for those claims arising on or after October 1, 2023. *See* NRS 41A.097(2)-(3) (2023). As the claims here arose before October 1, 2023, these amendments do not affect our analysis.

The accrual date for NRS 41A.097(2)'s one-year limitations period is generally a question of fact that must be decided by a jury; however, courts may determine the date as a matter of law when the evidence irrefutably shows the plaintiff was placed on inquiry notice of a potential claim. *Winn v. Sunrise Hosp. & Med. Ctr.*, 128 Nev. 246, 251-52, 277 P.3d 458, 462 (2012). "A plaintiff discovers [their] injury when [they] know[ ] or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of [their] cause of action." *Id.* at 252, 277 P.3d at 462 (quoting *Massey v. Litton*, 99 Nev. 723, 728, 669 P.2d 248, 252 (1983)) (internal citation omitted). The Nevada Supreme Court has held that a plaintiff is placed on inquiry notice of potential claims for medical malpractice when they receive all relevant medical records because the plaintiff then has "access to facts that would have led an ordinarily prudent person to investigate further into whether [the patient's] injury may have been caused by someone's negligence." *Id.* at 253-54, 277 P.3d at 463; *see also Kushnir v. Eighth Jud. Dist. Ct.*, 137 Nev. 409, 410, 495 P.3d 137, 139 (Ct. App. 2021) ("Because the plaintiffs had all necessary medical records and were therefore on inquiry notice of the claim more than a year before filing the complaint, . . . we conclude that the one-year statute of limitations expired and extraordinary writ relief is appropriate.").

In this case, the district court erred in denying Dr. Igtiben's motion to dismiss, as it is undisputed that RPII received the relevant medical records in January 2020—placing her on inquiry notice of potential professional negligence and wrongful death claims against Dr. Igtiben at

that time.[7] *See Kushnir*, 137 Nev. at 412-13, 495 P.3d at 141. Therefore, as of January 6, 2020, RPII had access to facts that would have led an ordinarily prudent person to investigate whether Dr. Igtiben's treatment and care led to Kamario's death. Indeed, RPII appears to have acknowledged that such claims may have existed as early as 2020 in the federal and probate actions. As a result, pursuant to NRS 41A.097(2), RPII was required to file any professional negligence or wrongful death action within one year from the date she received the medical records. RPII did not file the present action until November 22, 2022, or approximately two years and ten months later, well outside of the one-year statute of limitations based on inquiry notice.[8] Therefore, the applicable statute of limitations had long since expired when RPII filed her complaint for

---

[7]Because we conclude that the medical records provided RPII the information necessary to place her on inquiry notice regarding alleged deficiencies in Dr. Igtiben's treatment and trigger NRS 41A.097(2)'s limitations period, the fact that she may have received Kamario's death certificate and the autopsy report after receiving the medical records does not change our decision. We note that the record before us is not clear about when RPII received the January 8 death certificate, although it was attached to the probate filings in May 2020, or the autopsy report, which is not contained in the record.

[8]We note RPII conceded at oral argument that no impediment prevented Dr. Simms from reviewing the case earlier than September 2021. By way of example, RPII neither raised, nor do we consider, whether the statute of limitations was tolled due to concealment. *See* NRS 41A.097(3) (discussing tolling due to concealment); *Senjab v. Alhulaibi*, 137 Nev. 632, 633-34, 497 P.3d 618, 619 (2021) (stating that appellate courts will not supply an argument on a party's behalf).

professional negligence in state court on November 22, 2022, and the district court should have dismissed the complaint as untimely.[9]

*CONCLUSION*

After receiving medical records sufficient to place RPII on inquiry notice of potential professional negligence claims, she failed to file the complaint within the statute of limitations. As there was no impediment to RPII filing suit before the statute of limitations expired, the district court was required to dismiss her complaint as untimely. Because the district court failed to dismiss the complaint, we grant the petition and direct the clerk of this court to issue a writ of mandamus instructing the

---

[9]As we conclude that we must grant writ relief and direct the district court to dismiss the complaint because the relevant statute of limitations has expired, we need not consider Dr. Igtiben's alternative basis for dismissal, wherein he asserts that the affidavit of merit attached to the complaint failed to satisfy NRS 41A.071. *See Wheble v. Eighth Jud. Dist. Ct.*, 128 Nev. 119, 1223 n.2, 272 P.3d 134, 1337 n.2 (2012) (declining to consider the petitioner's alternative bases for writ relief because the court granted writ relief and directed the district court to dismiss a complaint due to the statute of limitations having expired).

Nevertheless, we encourage the Legislature to consider clarifying the ambiguity in NRS 41A.071(2) as to *when* a physician must have practiced in the same or substantially similar area of practice in relation to the alleged professional negligence at issue in order to provide an affidavit or declaration of merit setting forth opinions regarding that negligence. Currently, no specific time frame is set forth in the statute. In this case, we note that Dr. Simms had not practiced as a hospitalist, Dr. Igtiben's practice area, for over 30 years when he submitted his affidavit of merit opining as to the appropriate standard of care governing Dr. Igtiben's treatment.

district court to vacate its order denying petitioners' motion to dismiss and to dismiss the underlying complaint as untimely under NRS 41A.097(2).

_____, J.
Bulla

We concur:

_____, C.J.
Gibbons

_____, J.
Westbrook